WILLIAM SMITH, Plaintiff-Appellee, *v.* GENERAL CASUALTY COMPANY
OF WISCONSIN, Defendant-Appellant.

Third District  No. 79-67

Opinion filed August 31, 1979.

Richard J. Berry, of Berry & O'Conor, of Streator, for appellant.

Larry Hofreiter, of Ottawa, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

William Smith commenced an action against an insured of the defendant, General Casualty Company of Wisconsin (hereinafter General Casualty), in the Circuit Court of La Salle County, Illinois. As required by the liability policy of the insured, General Casualty undertook the defense of the claim. General Casualty was represented by counsel as was Smith, who was represented by Donald S. Frey of Evanston, Illinois. On January 28, 1974, counsel for the defendant and attorney Frey reached a settlement agreement whereby General Casualty was to execute a draft in the amount of $7,000 and Smith was to execute a release of all claims against the defendant.

Smith executed the release and on February 1, 1974, General Casualty issued its draft in the amount of $7,000 payable to the order of William Smith and his attorney, Donald S. Frey. The draft stated on its face that it was "payable through" First Wisconsin National Bank of Madison, Madison, Wisconsin (hereinafter First Wisconsin). The draft was received by attorney Frey, whose signature of endorsement appears on the draft. However, the other signature purporting to be that of William Smith was not, in fact, the plaintiff's signature, and was penned either by Donald S. Frey or some person on his behalf without plaintiff's permission or authority. The draft was paid, but Smith did not receive any of the proceeds of the draft. During the time prior to trial Smith was reimbursed by the Client's Security Fund of the Illinois Bar in the amount of $2,500. Smith brought an action for conversion of the draft against General Casualty. The Circuit Court of La Salle County awarded summary judgment to the plaintiff in the amount of $7,000 plus costs of suit. Defendant's motion for summary judgment was denied and this appeal on behalf of the defendant followed.

Section 3—419(1)(c) of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 3—419(1)(c)) provides that "[a]n instrument is converted when * * * it is paid on a forged endorsement." Further, section 3—419(2) of the Code (Ill. Rev. Stat. 1973, ch. 26, par. 3—419(2)) recognizes a cause of action against the drawee who pays on a forged endorsement. These statutory authorities form the basis for the cause of action recognized by the trial court in its award of summary judgment to the plaintiff.

■■ An initial issue on appeal before this court is the identity of the drawee. The draft states that it is "payable through" First Wisconsin. Section 3—120 of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 3—120) provides that "[a]n instrument which states that it is 'payable through' a bank or the like designates that bank as a collecting bank to make presentment but does not of itself authorize the bank to pay the instrument." As a result, First Wisconsin is a collecting bank. A

collecting bank does not have the authority to pay the draft without first presenting the draft to the drawee for instructions as to disposition. The collecting bank—First Wisconsin—did receive the authority to pay the draft. The cashier of First Wisconsin swore that the draft was paid by the bank acting as an agent for General Casualty and acting upon the express instructions of General Casualty. The trial court did not err in concluding, based on this uncontradicted testimony, that the draft was paid with the express permission of the defendant-drawee of the draft. In this transaction General Casualty was both drawee and drawer of draft. Davenport and Henson, Uniform Commercial Code, Illinois Practice, section 3—120, Author's Comment.

Defendant also contends that the purported endorsement of William Smith is not a forgery but rather something of a different genre because of the principal-agent and attorney-client doctrines. We recognize the principal-agent and attorney-client doctrines, and we have examined the application of those doctrines in *Hutzler v. Hertz Corp.* (1976), 39 N.Y.2d 209, 383 N.Y. Supp. 2d 266, 347 N.E.2d 627. We do not believe that *Hutzler* represents the rule historically followed by the courts of this State, the rule most consistent with the policies embodied in the Commercial Code, nor the better rule of law. In short, *Hutzler* is not the law of this jurisdiction.

■■ ■ The rule of decision followed in Illinois is set out in *Crahe v. Mercantile Trust & Savings Bank* (1920), 295 Ill. 375, 129 N.E. 120. That case holds that one who stands in the position of attorney or agent may well have, by virtue of his position, the authority to collect the proceeds of a claim or judgment. That case also holds as a matter of law that such person does not have, by virtue of his position, the authority to endorse an instrument of settlement on behalf of his client. Indeed, the *Crahe* court expressly labels as a forgery any such unauthorized endorsement. It is clear that under *Crahe* the action for a conversion, which under section 3—419(1)(c) arises in the presence of a forgery, is not cut short merely because the converter's stylus is directed by the hand of an unscrupulous attorney or agent.

■■ The policy of casting losses on the party best able to prevent same permeates the nine articles of the Commercial Code. We believe that the bank to which the draft was first presented for payment and the bank with the only opportunity to ascertain the identity of the endorser was, under these facts, the bank best able to have prevented Smith's $7,000 loss from occurring. In his treatise, Professor Hawkland suggests that where the drawee is found liable to the payee for conversion, the same drawee can pass the loss back to its transferor until the loss is ultimately cast upon the bank or institution to which the draft was first presented for payment. (Hawkland, Commercial Paper 66-67; see also warranties of collecting

banks, Ill. Rev. Stat. 1973, ch. 26, par. 4—207.) We believe Professor Hawkland has correctly explained the functioning of the article 4 warranties as envisioned by the Code authors. Only if the plaintiff in the case at bar is allowed his cause of action against the drawee for conversion can the loss shifting mechanism of the Commercial Code operate in accordance with the design of the drafters. And only if we adopt the conclusion, as did the trial court below and our supreme court in *Crahe*, that William Smith's purported signature is, under the terms of section 3—419, a forgery, can plaintiff's cause of action be sustained. Because we believe a comprehensive reading of the Commercial Code compels this result, we conclude that the plaintiff's purported signature is a forgery within the meaning of the Code.

Defendant further contends that the amount of judgment entered on behalf of plaintiff Smith should be reduced by the amount of attorney's fees that plaintiff was obligated to pay attorney Frey. Such contention is based on the proposition that attorney Frey had a statutory lien on said judgment to the extent of his fees. We hold this contention to be invalid, as "An Act creating attorney's lien * * *" (Ill. Rev. Stat. 1973, ch. 13, par. 14) states that in order to enforce an attorney's lien, notice must be served in writing upon the client of the attorney asserting a lien. Since no notice was ever served in this matter, there is no outstanding lien.

■■ Finally, General Casualty asserts that the judgment previously entered on behalf of plaintiff Smith should be reduced by the amount which Smith has already been reimbursed by the Client's Security Fund of the Illinois Bar. We do not agree. Section 3—419(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 3—419(2)) states that in an action concerning a converted instrument, the measure of damages is the face amount of the instrument. There is no authority for reducing the amount of recovery thus established by statute, and the general rule regarding collateral sources (see, for example, *Schmitt v. Chicago Transit Authority* (1962), 34 Ill. App. 2d 67, 179 N.E.2d 838; *Geisberger v. Quincy* (1972), 3 Ill. App. 3d 437, 278 N.E.2d 404; *Wolfe v. Whipple* (1969), 112 Ill. App. 2d 255, 251 N.E.2d 77) militates against creating such a rule here. We believe the trial court correctly awarded plaintiff the face amount of the converted instrument.

Therefore, because of the foregoing reasons, the decision of the Circuit Court of La Salle County is affirmed.

Affirmed.

ALLOY and STENGEL, JJ., concur.