391 So.2d 238 (1980)
THE FLORIDA BAR, Appellant,
v.
ALLSTATE INSURANCE COMPANY, Appellee.
No. 80-147.
District Court of Appeal of Florida, Third District.
November 25, 1980.
Rehearing Denied January 7, 1981.
*239 Paige & Catlin, Daniels & Hicks, Lawrence & Daniels and Adam Lawrence, Miami, for appellant.
Adams & Ward and Robert C. Ward, Miami, for appellee.
Before HUBBART, C.J., and SCHWARTZ and BASKIN, JJ.
SCHWARTZ, Judge.
In 1975 and 1976, Ralph L. Johnston, an attorney then practicing in Dade County, effected personal injury settlements on behalf of three separate clients with the Allstate Insurance Company. In each instance, Allstate drew a draft for the agreed amount, payable "through the First National Bank of St. Petersburg" to the client and Johnston as co-payees. Johnston endorsed the drafts with both his own name and, without their knowledge, those of the clients and deposited them in his trust account in the First National Bank of Miami. After Allstate had duly authorized the St. Petersburg bank to make payment, Johnston absconded with all of the proceeds. The Florida Bar, through its Clients' Security Fund, then reimbursed each client for the 60% share of the settlement to which he was entitled-the total amount less 40% in attorney's fees due to Johnston. As the clients' subrogee, the Bar then brought this action against Allstate to recover the amounts it had paid, based on the claim that Allstate had converted the drafts. A jury returned a verdict for Allstate and the Bar appeals from the resulting judgment. Its primary contention is that its motion for a directed verdict at the conclusion of the evidence should have been granted. We agree and reverse the judgment below.
The plaintiff's theory of the case was bottomed on the clearly established principles that because they were payable "through" a collecting bank, Allstate is deemed the drawee of the drafts involved in this case, Messeroff v. Kantor, 261 So.2d 553 (Fla. 3d DCA 1972);[1] § 673.120, Fla. Stat. (1979), and that a drawee is liable for the conversion of a negotiable instrument when it is paid upon the forged or unauthorized endorsement of a co-payee. § 673.419(1)(c), Fla. Stat. (1979); Annot., Bank's Liability to Nonsigning Payee for Payment of Check Drawn to Joint Payees without Obtaining Indorsement by Both, 47 A.L.R.3d 537, 546-48 (1973); see, Glasser v. Columbia Federal Savings & Loan Ass'n., 197 So.2d 6 (Fla. 1967); First Independent Bank, N.A. v. Stottlemeyer & Shoemaker Lumber Co., 384 So.2d 952 (Fla. 2d DCA 1980); Wilton Manors National Bank v. Adobe Brick & Supply Co., 232 So.2d 29 (Fla. 4th DCA 1970). Under Sec. 671.201(43), an

*240 "[u]nauthorized" signature or indorsement means one made without actual, implied or apparent authority and includes a forgery.
The Bar contends, the appellee essentially concedes, and we agree, that there was no showing that Johnston had either actual, that is express,[2] or apparent[3] authority to sign his clients' names on the drafts. The only and determinative issue in controversy is whether he had the implied authority to do so. We hold that he did not.
It is, of course, clear that the mere existence of the attorney-client relationship does not alone create an implied authority for counsel to endorse his client's name on a negotiable instrument. Sainsbury v. Pennsylvania Greyhound Lines, Inc., 183 F.2d 548, 553 (4th Cir.1950); Nehleber v. Anzalone, 345 So.2d 822 (Fla. 4th DCA 1977);[4]Moran v. Loeffler-Greene Supply Co., 316 P.2d 132, 139 (Okla. 1957); cases collected, Annot., supra, at 548-49. Allstate claims, however, that this rule is not applicable to this case because, unlike the usual situation in which the lawyer similarly possesses no authority to compromise his client's claim at all, e.g., Bursten v. Green, 172 So.2d 472 (Fla. 2d DCA 1965); Nehleber v. Anzalone, supra, even the appellant does not dispute that Johnston was authorized to settle the cases in question. Not only is there no question raised as to his pre-negotiation authority, see, Coe v. Diener, 159 So.2d 269 (Fla. 2d DCA 1964), but it is clear that, by accepting the proceeds of the settlements, and, through their subrogee, suing Allstate for the "conversion" of those proceeds, the clients have ratified the settlements and may not now question Johnston's authority to enter into them. Nagymihaly v. Zipes, 353 So.2d 943 (Fla. 3d DCA 1978); Navrides v. Zurich Ins. Co., 5 Cal.3d 698, 97 Cal. Rptr. 309, 488 P.2d 637, 640-41 (1971).[5]
The legal question on which this case turns is therefore the still-narrower one of whether an attorney, specifically authorized to compromise a claim and collect the proceeds, may endorse the client's name on a check or draft tendered to effect the settlement. The decisions on this question are in clear and irreconcilable conflict. See cases collected, Annot., Authority of agent to indorse and transfer commercial paper, 37 A.L.R.2d 453, 491-97 (1954); 7 Am.Jur.2d, Attorneys at Law § 132 (1980). We believe that the better, and clearly the majority rule is that no such authority exists. E.g., Sainsbury v. Pennsylvania Greyhound Lines, Inc., supra; Crahe v. Mercantile Trust & Savings Bank, 295 Ill. 375, 129 N.E. 120 (1920); Pearcy v. First Nat. Bank in Wichita, 167 Kan. 696, 208 P.2d 217 (1949); Dacus v. Maryland Casualty Co., 40 N.M. 110, 55 P.2d 663 (1936); Central Trust Co. v. Hahn-Jacobsen Co., 4 Ohio Op. 509, 33 N.E.2d 388 (Ohio App. 1935); Zidek v. Forbes Nat. Bank, 159 Pa.Super. 442, 48 A.2d 103 (1946). In rejecting the reasoning which forms the basis of the minority view, see, e.g., Bailey v. United States, 13 F.2d 325 (9th Cir.1926), the court stated in Rosacker *241 v. Commercial State Bank, 191 Minn. 553, 254 N.W. 824, 825-26 (1934):
The defendant contends that Kass, Zink & Kass could not, by making their [settlement] check payable to plaintiff and Hageman [plaintiff's attorney], restrict Hageman's authority to collect in money, and that consequently in the reduction of the claim to money Hageman had a right to indorse plaintiff's name. We do not regard such contention as sound. The right of Hageman to indorse plaintiff's name was no greater than it would have been had the company or the receiver remitted direct to Hageman a check payable to the plaintiff. If such had been the case, the authorities are substantially unanimous in support of the doctrine that Hageman would have had no right to indorse and that the bank would be responsible for accepting a forged indorsement. Hageman may have been entitled to collect in cash, but, having received and accepted a check in the form that he did, he might not indorse his client's name, much less forge it in order to obtain the proceeds.
Johnston's endorsements of the clients' names must therefore be regarded as no more than forgeries. When Allstate, as the drawee,[6] paid the drafts on those endorsements, it was therefore, and as a matter of law, liable for their conversion. See also, Louisville & N.R. Co. v. Citizens' & Peoples' Nat. Bank, 74 Fla. 385, 77 So. 104 (1917). Smith v. General Casualty Co. of Wisconsin, 75 Ill. App.3d 971, 394 N.E.2d 804 (1979) also so holds on facts which are totally indistinguishable from these.
For these reasons, the judgment below is reversed and the cause remanded with directions to enter judgment for the plaintiff-appellant in the amount claimed.[7]
Reversed and remanded.
NOTES
[1] The Messeroff case involved a set of facts virtually identical to this one, but the court considered there only the liability of the collecting banks. It did not deal directly with the issue now before us because the insurance company-drawee received a summary judgment below which the plaintiff did not appeal.
[2] Although Johnston stated that the clients all executed written authorizations, none were produced at the trial. Each client denied that this had occurred, and the defendant's complete failure to demonstrate that an appropriate search for the documents had been conducted rendered Johnston's testimony as to their contents plainly incompetent under the best evidence rule. Neylans v. Herndon, 79 Fla. 213, 84 So. 89 (1920); see, Dowd v. Star Manufacturing Co., 385 So.2d 179 (Fla. 3d DCA 1980); compare, Action Fire Safety Equipment, Inc. v. Biscayne Fire Equipment Co., Inc., 383 So.2d 969 (Fla. 3d DCA 1980).
[3] There was no showing that the clients, Johnston's principals, had done or said anything to induce Allstate to believe that he possessed such authority, as the "apparent authority" doctrine requires. Taco Bell of California v. Zappone, 324 So.2d 121 (Fla. 2d DCA 1975), and cases collected; Central Trust Co. v. Hahn-Jacobsen Co., 4 Ohio Op. 509, 33 N.E.2d 388 (Ohio App. 1935).
[4] The Nehleber case also unfortunately involved a generally similar factual situation with the obvious distinction, however, that the absconding lawyer was not authorized to settle the pertinent claim.
[5] At 488 P.2d 641, note 5, the California court makes clear that a ratification of the underlying settlement does not serve also to ratify an unauthorized endorsement of the client's name on the settlement draft.
[6] It bears emphasis that Allstate's status as the drawee of the instruments is the sole basis of our conclusion and that we do not hold that it remains liable on its agreements to pay the amounts of the settlements. On this question, by far the most persuasive authority is that a debtor drawer is discharged from an underlying obligation by the delivery and endorsement of an instrument in the manner involved in this case. Hutzler v. Hertz Corporation, 39 N.Y.2d 209, 383 N.Y.S.2d 266, 347 N.E.2d 627 (1976); Narvides v. Zurich Ins. Co., supra; 1 Restatement (Second) of Agency § 178 (1958); see, Louisville & N.R. Co. v. Citizens' & Peoples' National Bank, 74 Fla. 385, 77 So. 104 (1917) (dictum); see generally, Annot., Forgery by Debtor's Agent-Discharge, 49 A.L.R.3d 843 (1973). Thus, if Allstate's draft had instead been a check, it would no longer be responsible to the clients. These results are not, however, in the least inconsistent. See, Annot., 49 A.L.R.3d at 865-67. Compare, e.g., Zidek v. Forbes National Bank, supra (bank liable for payment of check unauthorizedly endorsed by attorney) with Zidek v. West Penn Power Co., 145 Pa.Super. 103, 20 A.2d 810 (1941) (debtor discharged by delivery and endorsement of same check). Indeed, the authorities cited either expressly (see, Hutzler, 347 N.E.2d at 631) or by strong implication (see, Narvides, 488 P.2d at 646) recognize the continued viability of a conversion action against the drawee. (The implication in the Smith case, infra, 394 N.E.2d at 806, that the Hutzler case is somehow contrary to Smith itself, is therefore incorrect.). It is true that it is usually assumed that the drawee is a bank and that the drawee and the maker are not one and the same. But there is no defensible basis upon which the obligations imposed by the UCC may be distinguished according to the identity of the drawee. Furthermore, we agree with the observation in Smith, 394 N.E.2d at 806-07, that imposition of liability upon the drawee is the only effective way to trigger the code's "loss shifting mechanism" so as to reach the potential obligation of the entity which may be primarily liable, the First National Bank of Miami, to which the forged drafts were first presented for payment. See, Jackson Vitrified China Co. v. People's American National Bank of North Miami, 388 So.2d 1059, 1060 (Fla. 3d DCA 1980); Messeroff v. Kantor, supra.
[7] The 60% of the settlements for which the Bar sued Allstate represents the interest of the clients in the drafts, which is the proper measure of damages in an action for their conversion. See, Page v. Matthews, 386 So.2d 815 (Fla. 5th DCA 1980); Annot., supra, 47 A.L.R.3d at 541, 553-54.