Argued and submitted October 21, 1985, reversed and remanded July 2, reconsideration denied July 25, petition for review allowed October 21, 1986 (302 Or 158)

FRANKLIN et ux,
*Appellants,*

*v.*

SAFECO INSURANCE COMPANY OF
AMERICA et al,
*Respondents,*

(33641; CA A33899)

721 P2d 874

Steven J. Pierce, Ontario, argued the cause and filed the briefs for appellants.

William M. Holmes, Bend, argued the cause for respondent Safeco Insurance Company of America. With him on the brief was Gray, Fancher, Holmes & Hurley, Bend.

Martin E. Hansen, Bend, argued the cause for respondent First Interstate Bank of Oregon, N.A. With him on the brief was Johnson, Marceau, Karnopp & Petersen, Bend.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiffs brought this action against defendants First Interstate Bank of Oregon (First Interstate) and Safeco Insurance Company of America (Safeco), alleging that each of them converted two insurance drafts drawn by Safeco and payable, upon acceptance, through First Interstate, Head Office Branch, by paying them on forged indorsements. ORS 73.4190(1)(c). The first draft, for $18,568.84, was dated February 5, 1981; the second, for $2,766.91, was dated July 20, 1981. Both drafts named plaintiffs and Roy Miller as joint payees. Trial was to a jury and, at the conclusion of plaintiffs' case, after defendants had moved for a directed verdict, the trial court entered a judgment of dismissal without prejudice under ORCP 54. It ruled that plaintiffs were required to prove that the alleged forgeries were executed with the criminal intent to defraud and that they had not sustained their burden. We reverse and remand.

The drafts were issued to reimburse plaintiffs and Miller for the loss that they incurred when a residence that plaintiffs had sold to Miller under a contract of sale in 1978 was damaged by fire on December 28, 1980. The sales contract provided that, in the event of a fire before full performance, plaintiffs had a first priority claim to all insurance proceeds. The fire insurance policy, owned by Miller, reflected plaintiffs' interest by showing them as loss payees.

Safeco delivered the drafts to Miller, who promptly presented them for deposit, bearing plaintiffs' allegedly forged indorsements, to First Interstate, East Bend Branch, which, in turn, conditionally credited Miller's personal account in the amount of the drafts. First Interstate then presented the drafts to Safeco, which accepted them. Neither Safeco nor First Interstate attempted to verify plaintiffs' indorsements.

Drafts made payable to two or more persons in the conjunctive must be endorsed by each payee in order to be negotiated.[1] There is no dispute that that was required here. A

---

[1] ORS 73.1160(2) provides:

"An instrument payable to the order of two or more persons:

"(2) If not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them."

draft or other instrument is converted under Article III of the Uniform Commercial Code, ORS 73.1010 *et seq*, when it is "paid on a forged indorsement."[2] Plaintiffs argue that First Interstate converted the drafts when it credited Miller's personal account in the amount of the drafts, even though the credits were conditional, and that Safeco converted them when it, in turn, accepted them, resulting in payment to First Interstate, rather than not accepting them for lack of proper indorsements.

At the close of plaintiffs' case, defendants argued successfully that, in order to prevail on a conversion theory under the code, it was necessary for plaintiffs to prove who forged the signatures and that the forger possessed a criminal intent to defraud at the time of the indorsement. The code does not define "forged indorsement"; however, ORS 71.2010(43) defines an "unauthorized signature or indorsement" as one "made without actual, implied or apparent authority and includes a forgery." Defendants argue that, because the code makes an apparent distinction between a forgery and an unauthorized signature or indorsement and does not define a forgery, the pre-code definition applies and that this court should adopt a definition conforming to the ordinary meaning of the term and the standard dictionary definition. Anderson, *Uniform Commercial Code* 181, § 1-201(4) (3d ed 1981).

■    Although we have no quarrel with that proposition, we do not believe that it requires, as defendants contend, that we adopt the criminal law definition of forgery in the second degree, requiring proof of identity and intent of the forger, ORS 165.007, just because there is a codifier's cross-reference to that section in ORS chapter 73, which is part of the UCC. We conclude that the definitions contained in the criminal code, not the statutes defining specific crimes, are applicable under the UCC to determine whether there is a forged indorsement. The definitions for forgery and related offenses are contained in ORS 165.002, subsection (8) of which provides:

---

[2] ORS 73.4190(1)(c) provides:

"(1) An instrument is converted when:

"* * * * *

"(c) It is paid on a forged indorsement."

" 'Forged instrument' means a written instrument which has been falsely made, completed or altered."

Subsection (5) provides:

"To 'falsely complete' a written instrument means to transform, by adding, inserting or changing matter, an incomplete written instrument into a complete one, without the authority of anyone entitled to grant it, so that the complete written instrument falsely appears or purports to be in all respects an authentic creation of its ostensible maker or authorized by the ostensible maker."

■ A forged instrument, then, includes one to which matter has been added, thereby making the incomplete written instrument into a complete one, without the authority of anyone entitled to grant it, so that the complete written instrument falsely appears to be authentic. Falsity, not intent, is the key. There is nothing in the definitions specifically requiring an intent to injure or defraud; those elements are added in the sections defining the crimes of forgery in the second degree, ORS 165.007, and in the first degree. ORS 165.013.

■ Obviously, however, the mere imitation of another's signature amounts to nothing, unless some consequence follows from doing so. The UCC is not concerned with the identity or intent of the forger; it is concerned with the right of the payee whose signature is forged and with the liability of the one who pays the instrument. Accordingly, all that the code requires for a conversion is that the instrument be falsely completed by the addition of the indorsement of a payee without the authority of the payee and that the instrument be paid on that indorsement.

■ Here, evidence relating to the forgery was presented by plaintiff Elsie Franklin, who testified:

"Q. Could you tell me, did you personally sign either one of those drafts?

"A. I did not.

"Q. Are you familiar with your husband's signature?

"A. Yes I am.

"Q. Did either one of those drafts bear your husband's signature?

"A. No, they don't.

"Q. Did you at any time consent to have your signature affixed to that draft by Mr. Miller or anybody else?

"A. No, I did not.

"Q. Do you know whether or not your husband ever agreed to have his signature affixed to those drafts by Mr. Miller or anyone else?

"A. No, he did not.

"Q. Have either you or your husband received any of the proceeds which are representative of those two drafts?

"A. No, we have not.

"Q. Did you at any time ever tell Mr. Miller that he could collect the insurance company proceeds?

"A. No."

That testimony provides sufficient evidence to permit a jury to find that the indorsements were falsely made, and Safeco does not contend that it did not pay the drafts, although First Interstate does so contend. Accordingly, it was error to dismiss the action against Safeco.

First Interstate contends that the trial court's dismissal with respect to it was correct, even if it is unnecessary to prove the forger's identity and intent, because, as a collecting bank, technically it did not "pay" or "accept" the drafts and had no authority to do either.[3] It argues that, as a collecting bank, it merely provided a conduit for presenting the drafts to Safeco, which was both the drawer and drawee, and did not "pay" the drafts itself. It contends that, until Safeco accepted and paid the drafts, it merely extended a provisional line of credit to its customer, Miller, pursuant to his depositor's contract. It points out that Miller did not, in fact, withdraw any of the funds until after the drafts had been accepted by Safeco.

There is logic to First Interstate's contentions, particularly in the light of the fact that, if it had advanced funds to Miller, it would have done so at its own risk, not plaintiffs' risk, and plaintiffs would have an action for conversion

---

[3] ORS 73.1200 provides:

"An instrument which states that it is 'payable through' a bank or the like designates that bank as a collecting bank to make presentment but does not of itself authorize the bank to pay the instrument."

against Safeco if it accepted the draft and, if it did not, they would have their rights under the insurance policy.

■ That rationale, however, does not appear to be the focus of the UCC's definition of conversion—that the draft be paid on a forged indorsement. ORS 73.4190(1)(c). The focus is on what the UCC means by "paid." On the one hand, it may be contended that a draft may be paid only by the party authorized to pay it (in this case, Safeco), in which case only that party could be a converter. To accept that contention would appear to run counter to subsection (3) of ORS 73.4190:

> "Subject to the provisions of the Uniform Commercial Code concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in the hands of the representative."

Here, First Interstate was a collecting bank[4] and, in that capacity, did not have authority to pay the draft. ORS 73.1200, *supra* n 3. Yet, the necessary implication of ORS 73.4190(3) is that, unless it dealt with the instrument or its proceeds in good faith and in accordance with the reasonable commercial standards applicable to it, it may be liable for conversion and that, if it did so deal with the instrument or its proceeds, it is not liable beyond the amount of any proceeds remaining in its hands.

■ Accordingly, we understand subsection (3) to impose separate liability on a depositary or a collecting bank, regardless of whether it has paid the drafts, to which liability the bank may have an affirmative defense. That interpretation appears to have been adopted[5] in *Montgomery v. First*

---

[4] ORS 74.1050(4) provides:

" 'Collecting bank' means any bank handling the item for collection except the payor bank."

First Interstate was also a depositary bank. ORS 74.1050(4).

[5] The court pointed out that

"a collecting bank is protected from an action for conversion only when it has dealt with the instrument 'in accordance with the reasonable commercial stan-

*National Bank,* 265 Or 55, 508 P2d 428 (1973), although the court stated that the bank in that case had paid the draft in full, albeit without authority. It follows that it was error to dismiss the claim against First Interstate as well as against Safeco.

Reversed and remanded.

---

dards applicable to the business of such representative * * *.' The burden of proof as to this defense rests on the collecting bank." 265 Or at 63. (Quoting ORS 73.4190(3).)

It went on to state that the bank had not sustained its burden.