MORRIS ET AL., APPELLEES, *v.* OHIO CASUALTY INSURANCE COMPANY, APPELLANT, ET AL.

[Cite as Morris *v.* Ohio Cas. Ins. Co. (1988), 35 Ohio St. 3d 45.]

(No. 87-287—Decided January 13, 1988.)

*Francisco A. Garabis,* for appellees.

*Earl, Warburton & Adams* and *Dick M. Warburton, Jr.,* for appellant.

DOUGLAS, J. The sole question posed for our consideration is whether an insurance carrier may be liable for conversion when the carrier authorizes its bank to pay a draft over a forged endorsement. For the reasons expressed *infra,* we answer the question in the affirmative and, accordingly, uphold the decision of the court of appeals.

It is axiomatic that a motion for

summary judgment may only be granted where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ. R. 56(C). Moreover, summary judgment is inappropriate unless it appears from the evidence that reasonable minds could come to but one conclusion and that conclusion is adverse to the nonmoving party. Civ. R. 56(C). Furthermore, in reviewing a motion for summary judgment, this court, as other courts, must construe the evidence in a light most favorable to the party opposing the motion. *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466, 364 N.E. 2d 267; *Toledo's Great Eastern Shoppers City, Inc.* v. *Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St. 3d 198, 201-202, 24 OBR 426, 429, 494 N.E. 2d 1101, 1104; *Wills* v. *Frank Hoover Supply* (1986), 26 Ohio St. 3d 186, 26 OBR 160, 497 N.E. 2d 1118; *McKinney* v. *Hartz & Restle Realtors, Inc.* (1987), 31 Ohio St. 3d 244, 31 OBR 449, 510 N.E. 2d 386. Therefore, absent an affirmative showing by the moving party, appellees herein, that no genuine issues exist as to any material fact, *Toledo's Great Eastern Shoppers City, Inc., supra*; *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66, 8 O.O. 3d 73, 74, 375 N.E. 2d 46, 47; *Hamlin* v. *McAlpin Co.* (1964), 175 Ohio St. 517, 519-520, 26 O.O. 2d 206, 207, 196 N.E. 2d 781, 783, and that such party is entitled to judgment as a matter of law, no summary judgment may be granted.

Appellees contend that appellant failed to oppose their motion for summary judgment with evidentiary materials sufficient to satisfy the requirements of Civ. R. 56(E) and that, additionally, they are, pursuant to R.C. 1303.55, entitled to summary judgment. We agree.

This court has recently, in *Savransky* v. *Cleveland* (1983), 4 Ohio St. 3d 118, 4 OBR 364, 447 N.E. 2d 98; *Mathis* v. *Cleveland Public Library* (1984), 9 Ohio St. 3d 199, 9 OBR 511, 459 N.E. 2d 877; and *Toledo's Great Eastern Shoppers City, Inc., supra,* had the opportunity to analyze Civ. R. 56(E). This rule provides in part that "* * * [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Thus, it might appear that the nonmoving party *must* respond to an adverse motion for summary judgment or face the entry of judgment against him. However, this court has stated that even where the nonmoving party fails *completely* to respond to the motion, summary judgment is improper unless reasonable minds can come to only one conclusion and that conclusion is adverse to the nonmoving party. *Toledo's Great Eastern Shoppers City, Inc., supra.* Accordingly, as the burden is upon the moving party to establish the non-existence of any material factual issues, the lack of a response by the opposing party cannot, of itself, mandate the granting of summary judgment.

Therefore, notwithstanding appellant's lack of response to appellees' motion for summary judgment, appellees are not entitled to summary judgment absent proof that such judgment is, pursuant to Civ. R. 56(C), appropriate. We do, however, find that summary judgment is appropriate in this case.

Initially, appellant asks this court

to find that its payment to James Whitney, the attorney for the estate and guardianship, constituted payment to the estate and guardianship. Accordingly, appellant would have us hold that appellant's obligation to the estate and guardianship was discharged when appellant both delivered the drafts in question to the agent of the estate and the guardianship, and then authorized payment of such drafts to the same party. We decline to make such a finding in this case.

In essence, appellant asks this court to determine whether an attorney has the inherent power to endorse a settlement check on behalf of his client. If so, appellant would be discharged from its obligation to the estate and guardianship; if not, appellant's obligation remains unpaid and owing. We find both that an attorney has no inherent authority to endorse a settlement check in the name of his client, and that, on the basis of the record before us, attorney Whitney made no such endorsement in this case.

In Ohio, as elsewhere, "[a]n attorney who is without special authorization has no implied or apparent authority, solely by virtue of his general retainer, to compromise and settle his client's claim or cause of action." *Morr* v. *Crouch* (1969), 19 Ohio St. 2d 24, 48 O.O. 2d 43, 249 N.E. 2d 780, paragraph two of the syllabus. See, also, Annotation (1953), 30 A.L.R. 2d 944, 945. Similarly, an attorney has no inherent authority to enter into a contract for the sale of real estate for his client. *Morr, supra,* at paragraph three of the syllabus. See, also, *Blanton* v. *Womancare, Inc.* (1985), 38 Cal. 3d 396, 212 Cal. Rptr. 151, 696 P. 2d 645. While this court has not previously addressed whether an attorney may endorse his client's name on a check or draft tendered to effect a settlement,

numerous other courts have done so. The clear majority of these courts find that no such authority exists. See *Jones* v. *Van Norman* (1987), 513 Pa. 572, 581, 522 A. 2d 503, 508, fn. 6; *State* v. *Musselman* (Utah 1983), 667 P. 2d 1061, 1068; *Palomo* v. *St. Bar of California* (1984), 36 Cal. 3d 785, 205 Cal. Rptr. 834, 685 P. 2d 1185; *Moran* v. *Loeffler-Greene Supply Co.* (Okla. 1957), 316 P. 2d 132, 138; *Crahe* v. *Mercantile Trust & Savings Bank* (1920), 295 Ill. 375, 129 N.E. 120; *Pearcy* v. *First Natl. Bank in Wichita* (1949), 167 Kan. 696, 208 P. 2d 217; *Dacus* v. *Maryland Cas. Co.* (1936), 40 N.M. 110, 55 P. 2d 663; *Levy* v. *First Pa. Bank N.A.* (1985), 338 Pa. Sup. 73, 487 A. 2d 857; *Florida Bar Assn.* v. *Allstate Ins. Co.* (Fla. App. 1980), 391 So. 2d 238; *Dobbins* v. *Natl. Union Ins. Co.* (1972), 79 Misc. 2d 241, 363 N.Y. Supp. 2d 567, affirmed (1975), 48 App. Div. 2d 828, 372 N.Y. Supp. 2d 552; *Sainsbury* v. *Pa. Greyhound Lines, Inc.* (C.A. 4, 1950), 183 F. 2d 548; *Nehleber* v. *Anzalone* (Fla. App. 1977), 345 So. 2d 822. See, also, Annotation (1954), 37 A.L.R. 2d 453, 491-497. Therefore, while we recognize that the decisions on this question are in conflict, see *Bailey* v. *United States* (C.A. 9, 1926), 13 F. 2d 325 and *Van Diver* v. *McFarland* (1986), 179 Ga. App. 411, 346 S.E. 2d 854, we believe that the better rule is that an attorney possesses no inherent authority, arising solely from the attorney-client relationship, to endorse his client's name on a settlement check or draft. The authority to receive a negotiable instrument on behalf of a client does not imply the power to endorse it. *Dobbins, supra.*

Accordingly, we hold that an attorney, absent any express authority from his client, has no authority to endorse the client's name on a check or draft tendered to effect a settlement.

Further, contrary to appellant's contention that attorney Whitney properly endorsed, pursuant to R.C. 1303.39(A),[3] and deposited the drafts into his escrow account, the only admissible evidence in the record, Whitney's affidavit, reflects that Whitney endorsed neither draft and that the drafts were deposited into one of Whitney's general office accounts.[4] Further, even assuming that Whitney endorsed the drafts, Official Comment 1 to UCC 3-404, R.C. 1303.40, provides that an " '[u]nauthorized signature' * * * includes both a forgery and a signature made by an agent *exceeding* his actual or apparent authority." (Emphasis added.) Thus, given our finding, *supra,* that attorneys have no inherent authority to endorse their client's name to a settlement draft, and the undisputed fact that there was no apparent or actual authority vested in Whitney to endorse the drafts herein, Whitney's endorsements, had he made any, would be unauthorized and appellant's obligation to the estate and guardianship would remain in effect.

R.C. 1303.55(A) concerns the conversion of a negotiable instrument. This section provides in part that "[a]n instrument is converted when * * * it is paid on a forged indorsement." R.C. 1303.55(A)(3). Comment 3 to UCC 3-419, R.C. 1303.55, provides that division (A)(3) is new. "It adopts the prevailing view of decisions holding that payment on a forged indorsement is not an acceptance, but that even though made in good faith it is an exercise of dominion and control over the instrument inconsistent with the rights of the owner, and results in liability for conversion." Thus, the statute creates an absolute right in the owner, appellees herein, to recover, absent evidence of negligence on the payee's part,[5] upon proof that the draft was paid over a forged endorsement. *Lee* v. *Skidmore* (1976), 49 Ohio App. 2d 347, 3 O.O. 3d 420, 361 N.E. 2d 499; *Gast* v. *American Cas. Co. of Reading, Pa.* (1968), 99 N.J. Super. 538, 541, 240 A. 2d 682, 684. See, also, White & Summers, Uniform Commercial Code (2 Ed. 1980) 586, Section 15-4; and Murray, Joint Payee Checks—Forged and Missing Indorsements (1973), 78 Comm. L.J. 393, 399-400.

The endorsements at issue herein were typewritten and restrictive in character. While such endorsements may, at times, be valid, see R.C. 1303.27(C) and Comment 2 to UCC 3-401, R.C. 1303.37,[6] we find that the

[3] R.C. 1303.39(A) provides:
"A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority."

[4] See fn. 2, *supra.*

[5] The question of negligence arises concerning whether one of the parties has permitted, by his own negligence, the forgery or theft to take place. When either the drawer or payee of an instrument is negligent, that party is estopped, pursuant to R.C. 1303.42 (UCC 3-406), from asserting the lack of authority of the signing party. The question of negligence is, however, not before us in the instant cause, as appellant has failed to raise any question of appellees' negligence.

[6] R.C. 1303.26 provides that "[a]n indorsement is restrictive which * * * (C) includes the words 'for collection,' 'for deposit,' 'pay any bank,' or like terms signifying a purpose of deposit or collection * * *."
Comment 2 to UCC 3-401, R.C. 1303.37, provides in part that "[a] signature may be handwritten, *typed, printed or made in any other manner.* * * *" (Emphasis added.)

endorsements at issue herein were unauthorized and thus not valid to operate as the signature of either the administrator or the guardian, the payees thereon.

R.C. 1301.01(QQ) provides that an " '[u]nauthorized' signature or indorsement * * * [is] one made without actual, implied, or apparent authority and includes a forgery." Further, R.C. 1303.40(A) provides that an "* * * unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value." Thus, an unauthorized signature does not operate as the signature of the named payee and, accordingly, may not act to pass title to an instrument or relieve the drawer of his obligation to pay the payee.[7]

In the instant case, appellees presented the sworn affidavits of attorney Whitney, Orin Morris and Tom Swope. These affidavits established that Whitney did not endorse the drafts at issue, and that Morris and Swope neither signed nor authorized anyone else to sign these drafts. Further, Morris and Swope are the *only* parties who possessed the authority to authorize an agent to sign on their behalf. Moreover, appellant has failed, through the use of any admissible evidence, to refute the statements contained in the affidavits. Accordingly, the endorsements appearing on the second and third drafts, No. X559281 and No. X559280, were unauthorized [8] and the payment of the drafts, as endorsed, constituted a conversion pursuant to R.C. 1303.55(A).

Appellant authorized the payment of the drafts. Even though the appellant was the original drawer, appellant was also the drawee for purposes of R.C. 1303.55(A) liability. See *Franklin* v. *Safeco Ins. Co. of America* (1986), 80 Ore. App. 183, 721 P. 2d 874; *Smith* v. *Gen. Cas. Co. of Wisconsin* (1979), 75 Ill. App. 3d 971, 31 Ill. Dec. 602, 394 N.E. 2d 804; and *Florida Bar Assn.* v. *Allstate Ins. Co.* (Fla. App. 1981), 391 So. 2d 238, wherein in-

---

[7] "* * * [P]rior payment to one who took under a forged indorsement * * * [does not provide a] discharge on the instrument, for such person cannot be a holder and accordingly cannot satisfy the discharge provisions of 3-603 [R.C. 1303.69(A)] which provides, 'The liability of any party is discharged to the extent of his payment or satisfaction to the *holder*. . . .' (emphasis added). Thus, the payee can claim that even though the drawee * * * has paid the check the drawer's liability was not discharged because the person receiving payment was not a holder. * * *" White & Summers, *supra,* at 582, fn. 6.

Further, title does not pass in such a situation because "* * * the transferee who takes under the thief's forged indorsement cannot qualify as a holder because section 3-202(2) [R.C. 1303.23(B)] says that '[a]n indorsement must be written by or on behalf of the holder. . . .' Since the thief lacks the status of a holder, he cannot effectively indorse the instrument, and his transferee cannot acquire that status. The transferee's purported indorsement suffers from the same infirmity that invalidated the thief's indorsement (*i.e.,* the transferee is not a holder) and, thus, no one in the chain of title which begins with the theft of an order instrument can attain the status of holder and consequently claim to be a holder in due course." *Id.* at fn. 7, 583.

[8] It should be noted that the question of who forged the endorsements on the drafts in question is yet unanswered. While this question exists, it is not material to this case and, accordingly, will not prohibit the granting of summary judgment herein. It should be noted, however, that this court has directed the briefs and record in this case to the Office of Disciplinary Counsel for consideration concerning the propriety of attorney James Whitney's actions.

surance companies, similarly situated to appellant herein, authorized payment of a draft over a forged endorsement and were liable as drawees for conversion.

Here, the drafts in question were drawn on appellant and *"payable through"* the First National Bank & Trust Company. R.C. 1303.19 provides that "[a]n instrument which states that it is 'payable through' a bank * * * designates that bank as a collecting bank to make presentment but *does not* of itself authorize the bank to pay the instrument." (Emphasis added.) Thus, "[t]he bank is *not* named as drawee, and it is not * * * authorized to pay the instrument out of the drawer's account[.] * * * It is merely designated as a collecting bank through which presentment is properly made *to the drawee.*" (Emphasis added.) Comment to UCC 3-120, R.C. 1303.19. See, also, *Messeroff* v. *Kantor* (Fla. App. 1972), 261 So. 2d 553. Therefore, appellant's bank was not the drawee of the drafts, but merely a conduit that presented the drafts to appellant for acceptance.[9] Consequently, appellant, as drawee, is liable, pursuant to R.C. 1303.55(A)(3), for accepting the drafts as endorsed and, thus, authorizing the payment of an instrument over a forged endorsement.[10]

Accordingly, we hold that an insurance company may, as drawee of a draft, be liable in conversion, pursuant to R.C. 1303.55(A)(3), when it pays the draft through its collecting bank over a forged endorsement.

Further, we find that summary judgment is equally appropriate here pursuant to R.C. 1303.77. This section provides in part that "[t]he owner of an instrument which is lost, whether by destruction, theft, or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. * * *"

In the case now before us, appellees have clearly proven that they were the owners of the drafts in question. Further, appellees have through appellant's own statements shown that appellant released all dominion and control over the drafts to appellees' agent. Appellees have proven that the instruments were lost "by destruction, theft, or otherwise." R.C. 1303.77. Moreover, the question at hand was not one of the drafts' ownership or terms, but of their theft, and of the forged endorsements found thereon. Accordingly, the elements of R.C. 1303.77 have been met and appellees would, notwithstanding their recovery pursuant to R.C. 1303.55(A)(3), be entitled to summary judgment pursuant to R.C. 1303.77.

We, therefore, affirm the judgment of the court of appeals and remand the cause to the trial court for determination of the currently pending claims.

*Judgment affirmed and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, WRIGHT and H. BROWN, JJ., concur.

---

[9] R.C. 1303.45 and 1303.46 govern acceptance of a draft. R.C. 1303.45 provides in part that "[a] * * * draft does not of itself operate as an assignment of any funds in the hands of the drawee * * *, and the drawee is not liable on the instrument until he accepts it." R.C. 1303.45(A). R.C. 1303.46(A) provides that "[a]cceptance is the drawee's signed engagement to honor the draft as presented. * * * It becomes operative when completed by delivery or notification."

[10] We do, however, note that this case is not at an end because of the granting of appellees' motion for summary judgment. There continue to be cross-claims and counterclaims pending determination in the trial court below.