OPINION
The following is an accelerated calendar appeal, submitted on the briefs of the parties, from a final judgment of the Geauga County Court of Common Pleas in which the court granted summary judgment in favor of appellees, Lawrence A. Rentschler (individually refereed to as "Rentschler") and the Berkshire Board of Education ("Berkshire Local" or "Board of Education"), as to the breach of contract claims raised by appellant, Connie Hietanen ("Hietanen"). For the reasons that follow, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
The facts pertinent to this appeal are as follows. Hietanen is employed as a bus driver for Berkshire Local. On April 8, 1997, Hietanen was called by the transportation supervisor at the school, Nancy Nocifora ("Nocifora"), who requested that Hietanen "double-up" her driving duties for that afternoon. "Doubling-up" occurs when a bus driver is assigned an additional route when another driver becomes unavailable. In this case, Hietanen was informed that she was "doubling-up" for a route originally assigned to Nocifora who was needed to drive students to a sporting event. The sporting event was later canceled and Nocifora, rather than assuming her originally scheduled route, had Hietanen continue and drive the additional route. Later that day, Hietanen had the following conversation with Nocifora over the two-way public radio located on each bus:
"Hietanen: 203 to Base, Nancy.
"Nocifora: Go ahead.
"Hietanen: What bus are you driving this afternoon?
 "Nocifora: I'm not. The trip was canceled at the last minute.
"Hietanen: Then why are we doubling-up at Claridon?
 "Nocifora: There was not enough time to change everything around and I have other job duties to perform.
 "Hietanen: Well it seems to me that there's plenty of time.
"Nocifora: Negative."
The next day, April 9, 1997, Hietanen received the following written warning from the school's superintendent, Rentschler, regarding the above incident:
 "While monitoring our school bus radios on the afternoon of Tuesday, April 8, 1997 — as I often do to help when assistance is needed — I overheard comments by you directed toward the district's Transportation Supervisor, [Nocifora], that were not only inappropriate but also unprofessional and unacceptable.
 "[Nocifora], with the superintendent's approval, maintained the "double-up" route arrangement at Claridon Elementary in order to meet two deadlines set for her by the Superintendent and Treasurer. Your comments and the tone in which they were delivered implied that the double-up was retained for no particular reason or possibly that [Nocifora] simply chose not to drive.
 "As a school bus driver one of you duties is to drive school bus routes as directed. Any questions about an assignment is to be directed to the supervisor in a private conversation after completion of the assignment and not over the public airways — a violation of FCC regulation. Appropriate use of bus radios has been discussed with drivers many times since their initial installation some years ago.
 "Consider this letter a written reprimand. Any future behavior or similar displays will result in additional disciplinary action including possible suspension. As per the current Agreement Between [Berkshire Local] and the Classified Employees of the School District, page 8 DISCIPLINARY ACTION, you may initial a copy of this letter before it is placed in your file." (Emphasis sic).
Upon receiving the above written reprimand, Hietanen requested a hearing before the Board of Education whose by-laws provide, at Section 0133, that the Board may "assume jurisdiction over any dispute or controversy arising within [Berkshire Local]" and states that it will provide a "fair and impartial forum" for the resolution of disputes. On or about April 14, 1997, Hietanen and a bus driver representative, Donald Starr, met with the Board of Education where it is apparent that concerns regarding "doubling-up," bus safety, and a possible breach of the non-certified employment contract between Berkshire Local and Hietanen were raised. Specific to this appeal, Hietanen raised the superintendent's failure to adhere to the following two provisions, found in Policy #4150 of the contract, with respect to disciplinary actions:
 "The Superintendent shall prepare administrative guidelines for situations most often encountered which provide for progressive penalties which include, where appropriate:
"A. verbal warning;
"B. written warning;
"C. transfer;
"D. suspension without pay.
"* * *
 "In the event that it is necessary to take disciplinary action against a classified employee, a notice in ordinary and concise language shall be sent to the classified employee specifying:
 "A. the specific acts and omissions upon which the disciplinary action is based;
"B. a statement of the cause for the action taken;
 "C. a quotation of the rule or regulation which it is claimed the classified employee violated;
 "D. the penalty that may be suffered as a result of the classified employee's acts or omissions."
By letter dated April 30, 1997, Berkshire Local's superintendent, Rentschler, responded to the allegations made during Hietanen's "appeal meeting with the Board of Education on April 14, 1997." Rentschler responded to Hietanen's "appeal" by stating that her comments to the transportation supervisor on April 8, 1997, had nothing to do with bus safety. He further alleged that said comments over Berkshire Local's two-way radio were in violation of Federal Communication Commission regulations as well as established Berkshire Local policies that prohibit use of the radio for anything other than the safe and efficient operation of the bus system. As to his decision to give Hietanen a written reprimand before a verbal warning, Rentschler stated that discussions as to the proper use of the two-way radio system was the topic of driver meetings and informal discussions and that Hietanen was already aware of the consequences of improper use of the radio including flagrant violations such as in the current case. Rentschler further informed Hietanen that the "position of the administration and the Board of Education relative [to Hietanen's discipline] remains unchanged."
On August 4, 1997, Hietanen filed a complaint in the Geauga County Court of Common Pleas asserting claims of breach of contract; negligence; bad faith; malice; and lack of due process, all arising from the written reprimand given to her by Rentschler. Hietanen sought the removal of the written reprimand from her personnel file as well as a judgment enjoining appellees from ever mentioning or disclosing her alleged "inappropriate behavior" of April 8, 1997. Because of appellees' alleged "negligent, arbitrary, capricious, and bad faith manner in which [appellees] performed [under] the terms of the contract," Hietanen further sought reimbursement for all of her litigation expenses including court costs and reasonable attorneys fees. Appellees filed an answer, jointly, to the complaint and discovery ensued between the parties.
On July 10, 1998, appellees filed a motion for summary judgment asserting that they were entitled to judgment as a matter of law for the following two reasons. First, appellees claimed that there was no breach of the employment contract, and, second, that Hietanen suffered no damages as a result of said "breach."
Appellees' arguments in support of their position for summary judgment focused on the portion of Policy #4150 with respect to progressive discipline. Specifically, appellees noted that the superintendent was only responsible to prepare administrative guidelines for those situations that were "most often encountered." Appellees then cited to portions of Hietanen's deposition testimony wherein she acknowledged that during her employ with Berkshire Local she had seen no other bus driver being reprimanded, either in writing or orally, for using a public radio to challenge the authority of his or her supervisor. Moreover, Rentschler submitted an affidavit wherein he stated that, during his tenure as superintendent, he has "never had to reprimand an employee, bus driver or otherwise, because of their improper use of the public radio." He further asserted that the reprimand of Hietanen was not a "situation most often encountered" by him in his capacity as superintendent.
Appellees further noted that Policy #4150 only required the superintendent to use progressive punishment "where appropriate." In this case, appellees alleged that Hietanen's activities warranted a written reprimand and asked the court to defer to the discretionary judgment of the Board of Education and its administrator when reviewing decisions made by them.
Finally, appellees further asserted that Hietanen could not prove that she suffered any damages as a result of the written reprimand. Specifically, appellees stated that Hietanen was "not sanctioned, nor was her pay affected in anyway [sic], * * * [she] received no demotion in status, nor was there any interruption to her work, [she] did not receive any threats or comments from any of the [appellees] regarding what would happen in the future, * * * [and] no one but the parties to the incident knew anything about this written reprimand." The above represented the only arguments that appellees made in support of their motion for summary judgment.
On September 8, 1998, Hietanen filed a response to appellees' motion for summary judgment. Hietanen first noted that appellees only addressed her breach of contract claim and made no attempt at addressing her issues related to negligence; bad faith; malice; lack of due process, as well as her prayer for equitable relief.
In response to appellees' arguments with respect to the breach of contract claims, Hietanen accused appellees of trying to narrowly construe the language in Policy #4150 as not applying to an employee who uses a two-way radio to challenge the authority of a supervisor because that exact factual occurrence is not a situation "most often encountered." Hietanen responded to this argument by focusing on each individual charge. She presented evidentiary materials to suggest that her bus radio conversation was not an act of insubordination, but, rather, "school related." She also presented the deposition testimony of Rentschler wherein he admitted that no administrative guidelines regulating any conduct had been enacted pursuant to Policy #4150. He further admitted at deposition that an unspecified number of employees, other than Hietanen, had been given verbal discipline over their use of the two-way radio system in the past. Hietanen also submitted Rentschler's written reprimand of April 8, 1997, to establish that the "use of bus radios has been discussed with drivers many times."
As to appellees' claims that the court should give Berkshire Local and their administrators discretion in dealing with disciplinary actions, Hietanen agreed, but asserted that said discipline should not be done in the arbitrary and capricious manner such as occurred in this case. In addition to presenting evidence concerning the action or inaction on the part of the superintendent in formulating "administrative guidelines," Hietanen submitted the deposition testimony of a school board member who admitted that the board took no other action with regard to her "appeal" other than simply directing the "superintendent to handle the situation." She further submitted affidavits from herself and Donald Starr as well as the minutes from the Board of Education's meetings for April 14, 1998, as evidence of the lack of action taken on the part of the Board of Education as to her "appeal."
Finally, as to appellees' claims that she lacks damages, Hietanen argued that she was entitled to equitable relief as well as such other relief as the court may deem reasonable including attorney fees. Contrary to appellees' assertions that she was not sanctioned or subject to future harm, she noted that Rentschler's letter of April 9, 1997, states that it is to be considered a written reprimand and warns of additional disciplinary action including suspension for future violations.
On September 11, 1998, the trial court issued its judgment granting appellees' motion for summary judgment. The sole reason for the court's decision consisted of the following; "[t]he court finds [appellees'] motion well taken for the reasons stated in [appellees'] brief." From this judgment, Hietanen filed a timely notice of appeal and now presents, within her sole assignment of error, that the trial court erred in granting appellees' motion for summary judgment.
Civ.R. 56(C), providing the standard governing motions for summary judgment, states in pertinent part that:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *"
In construing Civ.R. 56(C), the Supreme Court of Ohio has stated that the moving party bears the burden of establishing that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds, construing the evidence in favor of the nonmoving party, can come to but one conclusion and that conclusion is adverse to the party opposing the motion. Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Morrisv. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45, 46-47.
The Supreme Court of Ohio in Dresher v. Burt (1996), 75 Ohio St.3d 280, set forth the burden that is placed on each party when a motion for summary judgment is filed. The court held:
 "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id. at 293. (Emphasis sic.)
In appellees' motion for summary judgment, evidentiary materials were presented that suggested that the Board of Education did not breach the employment contract with respect to the incident with Hietanen. This may very well be true. However, as previously discussed above, Hietanen responded to each of the arguments presented by appellees and submitted evidentiary materials to the contrary. It is not the province of the trial court in a summary judgment exercise to either weigh the evidence before it or accept one party's interpretation of the evidence intoto. Instead, Civ.R. 56 requires that the evidence presented must be construed most favorably for the non-moving party. This standard of review was not properly applied in this case as even a cursory review of the record, consisting of dozens of documentary materials presented by the parties, reveals that several material issues of fact exist as to whether appellees properly performed their obligations under the employment contract with Hietanen.
As to the issue of damages, we recognize that Hietanen's damages may be slight. After all, she initially only requested that the Board of Education follow Policy #4150 and remove the reprimand from her employment file. This case has now developed into a somewhat larger controversy from the equitable relief she previously sought. Notwithstanding the fact that Hietanen's monetary damages may be slight, she is entitled to her day in court and may seek any potential remedies that she is entitled to receive even if those damages are nominal.[1] Hietanen's sole assignment of error has merit.
Based on the foregoing the judgment of trial court is reversed and this matter is remanded for further proceedings consistent with this opinion.
FORD, P.J., concurs,
CHRISTLEY, J., concurs in judgment only.
[1] "`Nominal damages' are those recoverable where a legal right is to be vindicated against an invasion thereof which has produced no actual loss of any kind, or where, from the nature of the case, some injury has been done, the extent of which the evidence fails to show. `Nominal damages' are limited to some small or nominal amount in terms of money." Lacey v. Laird
(1956), 166 Ohio St. 12, at paragraph two of the syllabus.