OPINION
Appellant/cross-appellee, Famous Supply Co. ("Famous"), appeals from the judgment of the Trumbull County Court of Common Pleas entered on April 19, 2000. After a jury trial, a verdict was rendered in favor of Famous in the amount of $5,000. Famous had sued appellees/cross-appellants, A.B. Cole, Inc. ("Cole") and Jon D. Clark ("Clark") for a debt of $24,335. Previously, on November 10, 1999, the trial court granted Famous' motion for summary judgment as against Cole for the full amount of the debt, but denied the motion with respect to Clark. Since Cole was uncollectible, Famous proceeded with its action against Clark. Clark has filed a cross-appeal. The following facts are relevant to a determination of these appeals.
Cole was a family business located in Warren, Ohio. It was in the business of installing heating and air conditioning units. Clark was a grandson of A.B. Cole. The company established a relationship with Famous, a distributor of heating units, around 1960. Clark began working for Cole in 1979.
In 1988, Cole's account with Famous fell into arrears. Famous' representative, Tony Angelo, requested that Cole provide Famous with a credit application. At that time, Clark was the vice-president of Cole. Clark prepared and signed the credit application in that capacity, although he failed to indicate his corporate capacity next to his signature. On the application, Cole requested credit in the amount of $5,000. At the top of the application, which was one page in length, that amount appears to have been approved, as a handwritten notation appears "5/4/88 opening 5000 limit [unknown symbol] T.A." It appears that "T.A." represents Tony Angelo's initials.
In small print at the bottom of the application, but above the signature lines, the following paragraph appeared, in relevant part:
 "I, we the undersigned, being the owner or principal stockholder of the corporation, known as * * * A.B. Cole, Inc. who have made application for credit with you, hereby agree for valuable consideration to unconditionally indemnify you from any and all losses you might sustain by reason of the corporation failing to pay its obligations when due for merchandise delivered by you, and I, we do agree to waive notice of default, hereby giving you the right to extend the time of payment without limitations and do individually and severally agree to be personally liable for the obligations of any merchandise or credit extended by you. * * *."
 Clark and Tony Angelo signed the application. Clark testified that at the time he signed the application he owned seven percent of the company's stock. The application requested multiple credit references for the corporation and also its banking information, which was provided. No such information was sought with respect to Clark as the signator.
Clark testified that after the application was signed, the companies' course of dealings with each other did not change, rather, it continued as it had before. However, the companies' course of dealings was significantly at variance with the credit line. While Tony Angelo did not testify at the trial, Famous' credit manager since 1992, David Figuly, did testify. He testified that, at one point, Cole had an outstanding account in excess of $70,000. At the time of the default in 1999, the balance on the account was in excess of $24,000. But no modification of credit line or guarantee was ever sought in writing to conform with the actual dealings of the parties.
At trial, Clark denied he ever intended to guarantee the account personally, and testified that he did not realize the application included a personal guarantee. In fact, he denied ever reading the clause. He also testified that Tony Angelo did not request that the application be signed by the principle stockholder, nor indicated to him that he was personally guaranteeing the account.
At the close of evidence, Clark moved for a directed verdict. He argued that if he had entered a contract guaranteeing $5,000 of Cole's debt, that Famous, by extending credit in excess of $24,000 to Cole, had materially altered the terms of the guarantee contract without the express consent of the guarantor. Therefore, he argued, he was entitled to be entirely discharged from his obligation. The court overruled this motion. However, the court made a partial ruling in Clark's favor. Noting that Famous was within its rights to extend further credit to Cole at any time, the court held that if Famous wished to increase the terms of the personal guarantee correspondingly, it would have to notify the guarantor. The court further held that the guarantor would have to be given an opportunity to "sign on or sign off" on any amount additionally guaranteed in excess of the amount of credit originally requested. Having drawn this conclusion, the court then instructed the jury that if it found Clark had guaranteed Cole's debt personally, that Clark's maximum liability was for the amount of credit requested, $5,000. It further instructed that if the jury found liability, that it must find that Clark owed $5,000, because the debt exceeded that amount. The jury subsequently found that Clark owed Famous $5,000. From this judgment, Famous timely filed its notice of appeal, assigning the following errors:
 "1]. The trial court erred in failing to enter summary judgment in favor of Famous against Clark for the full account balance due, where Clark's personal guaranty clearly and unambiguously obligated him to pay the full account balance due.
 "2]. The trial court erred in partially directing a verdict for defendant Clark limiting the amount of the personal guaranty to $5,000, where the evidence and the testimony permitted reasonable minds to reach different conclusions.
 "3]. The trial court erred in instructing the jury that if it determined that defendant Clark was a guarantor, his liability was limited to $5,000."
On cross-appeal, Clark assigned the following error:
 "The trial court erred in failing to grant a directed verdict for Jon Clark when there has been a material change of the terms of the principal contract without the express consent of the guarantor."
 In its first assignment of error, Famous contends it was error for the trial court to fail to award it summary judgment against Clark for the full amount of the debt, $24,000. The standard of review for summary judgment is the same for both a trial and an appellate court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Our review is de novo. Burkholder v Straughn (June 26, 1998), Trumbull App. No. 97-T-0146, unreported, 1998 Ohio App. LEXIS 2895, at *6.
Civ.R. 56(C), which provides the standard governing motions for summary judgment, states in pertinent part that:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *."
 In construing Civ.R. 56(C), the Supreme Court of Ohio has stated that the moving party bears the burden of establishing that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds, construing the evidence in favor of the nonmoving party, can come to but one conclusion and that conclusion is adverse to the party opposing the motion. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Morris v. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45, 46-47.
Famous' argument is twofold. First, it argues that the terms of the guaranty clause are clear and unambiguous. Therefore, evaluation of the clause is a matter of law, and there are no issues of fact to be determined. Second, it argues the credit application and the guaranty are, in effect, separate and distinct contracts, which should be applied separately and, therefore, none of the terms in the credit application should limit the terms of the guaranty. Famous cites Hughes Supply,Inc. v. Stage 1 Mechanical, Inc. (May 30, 1997), Darke App. No. 1416, unreported, 1997 Ohio App. LEXIS 2295, in support of this proposition. Famous argues the terms of the guaranty were unlimited and that the court should have found, as a matter of law, that Clark was liable for Cole's entire debt.
If a contract is clear and unambiguous, then its interpretation is a matter of law, and there is no issue of fact to be determined. Alexanderv. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 245-246. If the intent of a written agreement is plain on its face, it is not necessary or permissible to resort to rules of construction or parol evidence to determine its effect. Gans v. Andrulis (Apr. 3, 1998), Portage App. 97-P-0043, unreported, 1998 Ohio App. LEXIS at *14, citing Inland RefuseTransfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 324.
Under the facts of this case, we cannot conclude that the personal guarantee clause contained in this contract is a separate and distinct contract from the credit application, which became the credit contract. This is a single page contract and, by all appearances, the granting of any credit whatsoever was contingent upon the debtor assenting to the personal guaranty clause. Having required a personal guaranty and made the extension of credit contingent upon such a guaranty, Famous cannot now claim that it was a separate and distinct contract. While the terms of the guaranty clause may be internally consistent and unambiguous, the clause was part and parcel to the credit contract wherein the debtor sought, and the creditor approved, a credit line of $5,000. Because the credit contract was for $5,000 while the guarantee, standing alone, purports to be unlimited, we conclude that it would have been error for the trial court to determine, as a matter of law, that the guarantee was unlimited. Famous' first assignment of error is without merit.
In Famous' second assignment of error, it argues that the trial court erred by partially directing a verdict limiting the amount of Clark's possible liability to $5,000. In its third assignment of error, Famous argues it was error for the trial court to instruct the jury consistent with this conclusion. As the resolution of these assignments turns on the same legal issue, we will address them in a consolidated fashion.
"[A] trial court may not grant a directed verdict unless the evidence, when construed in the light most favorable to the nonmoving party, leads reasonable minds to only one conclusion, and the conclusion is adverse to the nonmovant." Darroch v. Smythe, Cramer Co. (Apr. 3, 1998), Lake App. No. 96-L-212, unreported, 1998 Ohio App. LEXIS 1450, *7-8, citing Brozv. Winland (1994), 68 Ohio St.3d 521, 526. "Civ.R. 50(A), therefore, requires the trial court to give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence." Id. at *8. "If there is sufficient credible evidence to permit reasonable minds to reach different conclusions on an essential issue, then the trial court must submit that issue to the jury." Id., citing O'day v. Webb (1972),29 Ohio St.2d 215, paragraph four of the syllabus. The trial court concluded that, while Famous was free to extend further credit to Cole beyond that which was sought in the application, Clark only personally guaranteed the amount of credit sought in the application which became the contract. The court ruled, as a matter of law, that the amount of the guarantee could not be increased beyond that limit unless notice was provided to Clark and his written approval obtained, which did not occur in this case. This is not inconsistent with the trial court's prior ruling regarding Famous' motion for summary judgment.
It is a well-established rule of statutory construction that specific provisions prevail over general provisions. Schisler v. Clausing (1981),66 Ohio St.2d 345, 347. While here, we are not construing a statute, rather, we are evaluating a contract, this principal is relevant. The credit application, which, upon approval, became the contract, specifically asked for the amount of credit requested to be set forth. This was a specific term of this particular contract. In contrast, the guaranty clause was small-print, boilerplate language affixed to the form, and common to all of Famous' credit contracts. Within the four corners of the contract, Cole requested $5,000, and Famous assented to that amount. That was the contract.
While, as the trial court noted, Famous was free to extend credit in amounts beyond the terms of their contract, Clark's personal guarantee could not be extended beyond that which he contracted for without notice and assent in writing. Therefore, we find that Famous' second and third assignments of error are without merit.
In Clark's cross-assignment of error, he maintains that his personal guaranty was limited to the amount of credit Cole sought in its application. Therefore, he argues, when Famous extended credit to Cole in excess of that amount, it materially altered the terms of his personal guaranty without his consent and, consequently, voided his guaranty altogether. This argument is specious. Clark signed the contract, which included a guaranty for the amount requested. No later extensions of credit outside the terms of this contract are going to relieve him of this obligation. Clark's cross-assignment of error is without merit.
The judgment of the trial court is affirmed.
PRESIDING JUDGE WILLIAM M. O'NEILL, NADER, J., GRENDELL, J., concur.