JOURNAL ENTRY AND OPINION
The appellants, Angela and Michael Queener, appeal the decision of the trial court granting the motion for summary judgment on April 25, 2000 by appellees, Windy Hill Limited Co. and Windy Hill Limited Co., d/b/a Transworld News and General Video of America. For the following reasons we affirm the decision of the trial court.
Angela Queener (Queener) worked for Windy Hill and its related entities (herein referred to as appellee) from February of 1998 until March of 1999 when she left work and did not return. During the course of her employment, she came into contact with an individual named Daniel Malone, an independent contractor who provided cleaning services for the appellee's building.
Queener contends that during the course of her employment, Malone subjected her to sexual comments and innuendo as well as actual improper physical contact. Queener received three disciplinary write-ups during the period of her employment with appellee for having a bad attitude at work. She stated in her deposition that her attitude was due to the constant harassment she suffered by Malone. She contested one of the disciplinary write-ups, but failed to inform her supervisor that her attitude problems stemmed from the daily sexual harassment.
Queener testified that in February of 1999, she approached a supervisor, Harvey Horwitz, and informed him about the verbal harassment she had been receiving. According to Queener, Horowitz indicated that he would warn Malone about his conduct.
In March, after an incident in which Malone attempted to kiss Queener, she went to Horwitz and Kathy Burdick, the administrative secretary to the owners, and informed them of the harassment. They instructed her to write out a report summarizing the incidents of harassment. After providing her written complaint and receiving the owners' assurances that administrative action would be taken, Queener left work early on Friday, March 26, 1999.
Later that day, Queener was contacted by Burdick who informed her that the company had proposed a remedial action and asked her whether or not she would be willing to go through a trial run where Malone would not be allowed to be on the same floor as her. Queener said that she would let the company know her decision on Monday, but that she really did not think it was an appropriate solution. On Monday morning, Queener called her employer and stated that she would not be returning to work.
The appellants, Queener and her husband, filed a suit against Windy Hill Limited Co. and Windy Hill Limited Co. d/b/a/ Transworld News and General Video of America alleging that sexual harassment was perpetrated by Daniel Malone. Malone was not named as a defendant in the original action, but was later brought into the lawsuit when Windy Hill Limited filed a Third Party Compliant against Malone.
Appellee, Windy Hill Limited Co., then filed a motion for summary judgment against the appellants; the lower court granted summary judgment and dismissed the action.
The appellants filed notice of appeal and assert the following assignments of error:
 I. WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANTS/APPELLEES' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS/APPELLANTS' CLAIM OF SEXUAL HARASSMENT PURSUANT TO CHAPTER 4112 OF THE OHIO REVISED CODE AS PLAINTIFFS/APPELLANTS HAVE ESTABLISHED THE REQUIRED ELEMENTS TO SUPPORT THEIR SEXUAL HARASSMENT CLAIM.
 II. WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANTS/APPELLEES' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS/APPELLANTS' CLAIM OF CONSTRUCTIVE DISCHARGE.
 III. WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANTS/APPELLEES' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS/APPELLANTS' CLAIM OF SEXUAL HARASSMENT PURSUANT TO CHAPTER 4112 OF THE OHIO REVISED CODE AS PLAINTIFF/APPELLANT FOLLOWED THE SEXUAL HARASSMENT POLICY OF THE DEFENDANTS/APPELLEES.
 IV. WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANTS/APPELLEES' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF/APPELLANT MICHAEL QUEENER'S LOSS OF CONSORTIUM CLAIM.
In appellants' first and third assignments of error, they contend that the trial court improperly granted the appellee's motion for summary judgment against their sexual harassment claim and their claim under the appellee's sexual harassment company policy. The appellants' first and third assignments of error are without merit for the following reasons.
Civ.R. 56(C) concerns summary judgment and provides in part:
* * *
 Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
Civ.R. 56(E) provides in pertinent part:
* * *
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is no genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
In reviewing a motion for summary judgment, the court must construe the evidence and all reasonable inferences in a light most favorable to the party opposing the motion. Morris v. Ohio Cas. Ins. Co. (1988),35 Ohio St.3d 45, 517 N.E.2d 904; Harless v. Willis Day Warehousing (1978), 54 Ohio St.2d 64, 375 N.E.2d 46. In Dresher v. Burt (1996),75 Ohio St.3d 280, 662 N.E.2d 264, the court stated:
* * *
 A party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case.
* * *
 If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden * * * to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
Therefore, Windy Hill Limited Co. must first establish that, even in construing the evidence in a light most favorable to the appellants, there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. Once this has been accomplished, the appellants must defeat the motion for summary judgement by establishing a prima facie case for sexual harassment under R.C. 4112.
The Supreme Court of Ohio has held that in order for a plaintiff to establish a claim under 4112(A), prohibition of discrimination because of * * * sex, the plaintiff must demonstrate evidence of either of two types of sexual harassment: quid pro quo harassment, harassment that is directly linked to the grant or denial of a tangible economic benefit; or hostile environment harassment, harassment that does not affect an economic benefit but has the purpose or effect of creating a hostile or abusive working environment. Hampel v. Food Ingredients Specialties Inc. (2000) 89 Ohio St.3d 169, 176, 729 N.E.2d 726.
For a plaintiff to establish a claim for hostile environment sexual harassment, he or she must demonstrate: (1) that the employee was a member of the protected class; (2) that the employee was subjected to unwelcome harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) that the harassment complained of was based upon sex; (4) that the harassment had the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating, hostile or offensive work environment; and (5) the existence of respondeat superior liability. Scandinavian Health Spa, Inc. v. Ohio Civil Rights Commission(1990),64 Ohio App.3d 480, 489-490; Delaney v. Skyline Lodge, Inc. (1994),95 Ohio App.3d at 270; Harris v. Forklift System, Inc. (1993), 510 U.S. 17. The fifth element that must be proved under a sexual harassment claim, the existence of respondeat superior liability, has been clarified by this court to mean that "the employer knew or should have known of the harassment and failed to take remedial action. Scandinavian Health Spa, Inc. at 490. This expanded definition has been used in determining an employer's liability for harassment of employees by non-supervisors, co-workers, as well as non-employees. See also Faragher v. Boca Raton (1998), 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662; Burlington Industries, Inc. v. Ellerth (1998), 524 U.S. 742, 118 S.Ct. 2257,141 L.Ed.2d 633; Shepherd v. Slater Steels Corp. 168 F.3d 998 at 1004.
Under Title VII of the Civil Rights Act, an employer may assert an affirmative defense regarding his or her liability or damages in a sexual harassment claim. The defense comprises two necessary elements: * * * (1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise * * * Burlington Industries Inc. v. Ellerth (1998), 524 U.S. 742.
This court's review of the record displays sufficient evidence to satisfy the first four elements under a claim of hostile environment sexual harassment. The only element warranting discussion is the remaining element: (5) that the employer knew or should have known of the harassment and failed to take remedial action.
In a case similar to the case at bar, in Tackas-Davis v. Concorde Castings Inc. (Dec. 15, 2000), Lake App. No. 99-L-5920, unreported, 2000 Ohio App. LEXIS 5920, the court looked at the issue of an appellant's communication with co-workers regarding harassment she was receiving. In Tackas-Davis, the appellant did not report the alleged harassment to her supervisor for three years; she did, however, speak to a co-worker, in confidence, about some of the incidents. At some point, the appellant testified that her confidant told her to tell someone about what she was going through. None of these people were responsible representatives of Concorde [the employer] within the meaning of its sexual harassment policy. Id. at 15. The court found that the appellant did not intend to put her supervisors on notice of the sexual harassment by having discussions in confidence with her co-workers.
Additionally, in Gibson v. Federal Express Corp. (Jan. 12, 2001), Montgomery App. No. 18406, unreported, 2001 Ohio App. LEXIS 76, the court determined that Gibson [the appellant] did not mention the harassment to any management personnel until over a year after it allegedly began. Id. at 15. The court found that according to Burlington Industries Inc., a demonstration of the employee's failure to use the company's complaint procedure is sufficient to satisfy the employer's burden under the second step of the affirmative defense. Gibson at 15, citing Burlington Indus. Inc., (1998), 524 U.S. 742.
In the situation at bar, the appellants contend that the employer did not take the proper actions to remedy the harassment considering the harassment had occurred throughout the entire time of Queener's employment. However, when looking at the actions of the employer, we must consider the time at which they became aware of the harassment by Malone and what actions were taken to remedy the problem. Queener testified at a deposition that because of the constant harassment by Malone and the resulting stress, her work began to suffer. During this time period, Queener received three disciplinary actions based on her poor job quality and general attitude toward the company's customers. Queener stated that she was constantly under stress because of the harassment. After receiving three disciplinary reports, Queener responded to the last one only, dated January 16, 1999, but failed to address that her attitude and work were suffering because of the actions of Malone.
Further, in Queener's deposition, she discusses the fact that in early February, her supervisor, Harvey Horwitz, had asked her several times if everything was all right. She stated: He knew that I was having problems, and every time he asked me, I told him, `When I'm ready to tell you, I'll tell you.' It wasn't until later that month that she had an informal discussion with Horwitz about some of the verbal harassment that had been occurring. A month later, after another incident, Queener talked to Horwitz and Kathy Burdick. At that time, she informed them about all of the prior incidents with Malone that had occurred over the course of her employment. On March 26, 1999, the date of the final incident, Horwitz instructed her to write out a report describing everything that had occurred. There was also a discussion about forwarding the report to an attorney for legal advice on how to address the problem.
That same day, Kathy Burdick called Queener at home and discussed a proposed remedial action that would prohibit Malone and Queener from working on the same floor at the same time. The following work day, Queener called into the office and stated that she would not agree to the company's solution; therefore, she would not be returning to work.
Based on a review of the record, we agree with the trial court that the appellee satisfied its burden by showing that the appellants failed to establish a genuine issue of material fact regarding a tangible employment action and met its burden in establishing an affirmative defense that: (1) the company maintained a sexual harassment policy, which Queener reviewed when she started working there. The policy set out the steps involved when making a claim of sexual harassment, including who to contact, the procedure once contact has been made, and the course of action the employer is to take. Queener was aware of the policy and did not avail herself of it until a few days before leaving her job; and (2) Queener was given a corrective opportunity by the appellee a trial run to see if it could have resolved the situation by keeping Malone off any floor that Queener would be on at any given time. Queener was told about the remedial corrective measure as soon as she informed the appellee of the harassment. She then determined that it would not work out and did not return to her job. A demonstration of the employee's failure to use the company's complaint procedure is sufficient to satisfy the employer's burden under the second step of the affirmative defense. Burlington Indus. Inc. at 764.
Therefore, the appellants failed to show that the appellee actually knew of the harassment yet failed to take the appropriate measures as spelled out under their sexual harassment policy. Appellants' first and third assignments of error are without merit.
Appellants' second assignment of error contends that, due to the employer's lack of appropriate corrective response to the actions of Malone, Queener was unable to continue to work at her job and was, therefore, constructively discharged.
A constructive discharge exists if an employee's working conditions are so difficult or unpleasant that a reasonable person would feel compelled to resign. Scandinavian Health Spa at 487, See Riddle v. Newton Falls Exempted Village Bd. Of Edn. (Oct. 7, 1988), Trumbull App. No. 4004, unreported, 1988 WL 105556; Held v. Gulf Oil Co. (C.A.6, 1982),684 F.2d 427, 432. A reviewing court's determination of constructive discharge must be made on a case-by-case basis which must include an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct on the employee. Henry v. Lennox Industries, Inc. (C.A.6), 1985, 768 F.2d 746, 752, quoting Held supra.
In this case, the appellee had warned Malone once after an informal conversation with Queener. After learning that the warning did not end the harassment, the appellee attempted to keep the two parties away from each other. The intent of the appellee was to keep both Queener and Malone at the job site, but to keep them away from one another. This court views appellee's temporary cure as a spring board from which more severe actions could have been taken once the matter was properly investigated. Queener, however, did not allow the appellee to implement the trial solution.
In Tackas-Davis, supra, the court found that the employer was not responsible when the employee quit her job before the employer was able to take any corrective measures. There must be an attempt by the employee to allow the employer to attempt to correct or remedy the harassment that has occurred at the work site.
Therefore, appellants' second assignment of error is without merit.
Appellants' fourth assignment of error contends that the trial court erred in granting summary judgment against appellant Michael Queener in regard to his loss of consortium claim.
The very nature of a loss of consortium claim is a derivative action based on the close relationship between a husband and wife. Therefore, since this court has determined that the trial court did not err in granting summary judgment against the appellants, the husband's claim, based on his wife's injuries, must also fail. Lee v. Christmas (March 6, 1975), Cuyahoga App. No. 33758, unreported, 1975 Ohio App. LEXIS 6060, see also Schneider v. Morse (August 30, 1995) Carroll App. No. 637, unreported, 1995 Ohio App. LEXIS 3604. Therefore, appellants' fourth assignment of error is without merit.
Judgment affirmed.
It is ordered that appellees recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J., CONCUR. DIANE KARPINSKI, A.J., DISSENTS (SEE SEPARATE DISSENTING OPINION)