[Cite as *Jeffrey Allen Industries, L.L.C. v. Manco*, 2011-Ohio-2655.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| JEFFREY ALLEN INDUSTRIES, LLC, ET AL | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiffs-Appellants | : |  |
|  | : |  |
| -vs- | : | Case No. 2010-CA-0145 |
|  | : |  |
| RONALD J. MANCO, ET AL | : |  |
|  | : | O P I N I O N |
| Defendants-Appellees | : |  |

CHARACTER OF PROCEEDING:     Civil appeal from the Richland County Court of Common Pleas, Case No. 08-CV-1342H

JUDGMENT:     Affirmed in part; Reversed in part

DATE OF JUDGMENT ENTRY:     June 1, 2011

APPEARANCES:

For Plaintiffs-Appellants

JOSEPH T. OLECKI
WELDON, HUSTON & KEYSER
76 North Mulberry
Mansfield, OH 44902

For Defendants-Appellees

ROBERT A. FRANCO
1007 Lexington Avenue
Mansfield, OH 44907

*Gwin, P.J.*

{¶1} Plaintiffs-appellants Jeffrey Allen Industries, LLC and Stacey L. Trimble, and third-party defendant-appellant Jeffrey Benton appeal a summary judgment of the Court of Common Pleas of Richland County, Ohio, entered in favor of defendants-appellees John Offenburger and Stonybrook Cabinet Company, Inc. on all claims against appellees and on their third-party claim against appellant Benton. Appellants assign six errors to the trial court:

{¶2} "I. THE TRIAL COURT ERRED IN CONCLUDING THE PURCHASE AGREEMENT WAS A FULLY INTEGRATED AGREEMENT.

{¶3} "II. THE TRIAL COURT ERRED IN FAILING TO CONSIDER MANCO'S CLEAR DECLARATION AGAINST INTEREST IN DETERMINING WHETHER THE PURCHASE AGREEMENT WAS A FULLY INTEGRATED AGREEMENT.

{¶4} "III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO OFFENBURGER BASED ON HIS CLAIMED LACK OF KNOWLEDGE OF THE AGREEMENT BECAUSE, AT A MINIMUM, A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO OFFENBURGER'S AWARENESS AND ASSENT TO THE AGREEMENT.

{¶5} "IV. THE TRIAL COURT ERRED IN HOLDING THAT DEFENDANTS ARE NOT LIABLE FOR UTILITY BILLS WHILE THEY OCCUPIED THE FORMER PREMISES OF JEFFREY ALLEN INDUSTRIES, LLC.

{¶6} "V. THE TRIAL COURT ERRED IN FINDING PLAINTIFFS WAIVED THEIR CLAIMS BY EXECUTING THE PURCHASE AGREEMENT.

**{¶7}** "VI. THE TRIAL COURT ERRED IN ENTERING SUMMARY JUDGMENT FOR DEFENDANTS ON THEIR CONVERSION CLAIM AGAINST JEFFREY BENTON."

**{¶8}** The central issue in this case is whether an agreement to purchase business assets for a stated price may be modified by a prior agreement increasing the purchase price, if the purchase agreement contains an integration clause. We find evidence of the prior agreement is barred by the parol evidence rule.

**{¶9}** The trial court journalized an extensive judgment entry in this case. The court found the undisputed material facts are that Jeffrey Allen Industries, LLC was a cabinet making business wholly owned by Stacey Trimble, but operated and managed by her fiancé Jeffrey Allen Benton. Benton and Trimble decided to close the cabinet making business and sell off its assets, because Benton wanted to become a homebuilder. Their employee, Ronald Manco, met an investment advisor, John Offenburger, at a birthday party. Manco told Offenburger about the proposed sale of the cabinet making business. Benton had announced the assets of the business would soon be put up for auction.

**{¶10}** Manco told Offenburger that the business had been consistently profitable for several years. Manco said he would have tried to buy the business himself, but he did not have the means. Manco proposed that if Offenburger could buy the business assets, Manco would manage a new cabinet making business, and Offenburger and Manco would share any profits. Offenburger was interested even though Manco had no assets, meaning the purchase would depend wholly on Offenburger's assets and credits.

**{¶11}** Offenburger and Manco met with Benton to see the tools and assets of the business. Benton volunteered that his auctioneer told him the assets of the business would sell for between $175,000 and $225,000 at auction. At Offenburger's request, Manco prepared a list of the assets and inventory to be sold. Offenburger then took the list to consult with the industrial equipment salesman who had sold and serviced the tools and equipment. The industrial equipment salesman's opinion of the value of the items was within the range Benton's auctioneer had estimated.

**{¶12}** Offenburger then met with a bank officer at FirstMerit Bank to pursue financing in the event the parties were able to come to terms. Offenburger had the loan package structured so both he and Manco would be obligated on the loan.

**{¶13}** The court found Benton rejected Offenburger's initial offer to buy the assets for $150,000. Benton was asking $300,000, despite having disclosed that his own auctioneer had put a much lower value on the assets. After several weeks of negotiations, Offenburger presented Benton with a written Asset Purchase Agreement, offering a purchase price of $200,000 for the assets and inventory, to be paid in full, in cash or certified funds, at a closing to be held on March 23, 2007.

**{¶14}** On March 16, 2007, Trimble, Benton, Manco, and Offenburger met at Offenburger's Merrill Lynch office where all four signed the Asset Purchase Agreement before a notary public. Trimble signed both as an individual and in a representative capacity for Jeffery Allen Industries, LLC, and the other three signed solely as individuals.

**{¶15}** On March 23, 2007, Trimble and Benton met Manco, Offenburger, and their banker for the closing. On behalf of Jeffrey Allen Industries, LLC, Trimble and

Benton accepted the $200,000 in certified funds tendered for the assets being sold, and transferred the assets to Manco and Offenburger, for their new company, Stonybrook Cabinet Company, Inc. The new company was not a party to the Asset Purchase Agreement.

{¶16} After the closing, Manco and Offenburger transferred the assets to Stonybrook Cabinet Company. The new company operated out of Jeffrey Allen Industries' former premises. Offenburger did not work in the new business, but continued his employment as an investment adviser.

{¶17} The court found it was undisputed that within a few weeks of the closing, without Manco's or Offenburger's knowledge or permission, Benton approached certain Stonybrook Cabinet customers and convinced them to give Benton their payments for amounts the customers owed to Stonybrook Cabinet Company. The court found there was no dispute that Benton never advised Manco or Offenburger he intended to intercept these payments from their customers, nor did Benton tell them he had done so after the fact. The court found Benton admitted he never turned any of the funds he received from Stonybrook's customers over to Stonybrook. In late April when Manco and Offenburger discovered Benton had possession of their customers' payments, Offenburger directed Manco to contact the Crawford County Sheriff's Department.

{¶18} Benson maintained Manco and Offenburger owed Jeffrey Allen Industries an additional $97,000 for the purchase of the business's assets. This included a payment of $50,000, and Benson's retention of approximately $47,000 worth of certain assets he claimed were not included in the sale.

{¶19} Stonybrook Cabinet Company experienced mounting losses until FirstMerit Bank contacted Offenburger to advise him that Manco had completely exhausted the company's $100,000 operating line of credit, and checks were being presented for payment without sufficient funds available to cover them. Offenburger examined the finances and closed Stonybrook Cabinet Company, paying off the bank loans from his personal funds.

{¶20} The court found there was no dispute over what assets were being sold and no dispute that the assets were being transferred at the time of the closing. The court also found there was no dispute that the list of the assets and inventory to be sold was prepared sometime prior to the closing. The court found Benton conceded in his deposition testimony the parties had agreed what would be sold and that everything that they intended to sell was actually sold to Manco and Offenburger.

{¶21} However, the court found the parties did not agree on whether a final listing of the assets was attached as an exhibit to the Asset Purchase Agreement at or before the closing. The court found the dispute was not material, because such exhibits to a contract are often not attached to the actual contract being signed.

{¶22} The court found the undisputed evidence is that the list of inventory and equipment was prepared, and exchanged between the buyers and sellers, and each side understood precisely what was to be sold. The court found the sellers signed the contract and then proceeded to the closing; the buyers tendered full payment for the assets; the sellers accepted payment; and all assets the parties intended to be included in the sale were actually sold.

**{¶23}** The trial court found Section 2 of the Asset Purchase Agreement states Manco and Offenburger would not assume or be responsible for any liabilities, obligations, indebtedness, or claims against Jeffrey Allen Industries LLC or any other person employed by or affiliated with it.  In Section 15, the Agreement provides Jeffrey Allen Industries LLC indemnifies and promises to defend and hold the buyer harmless against all claims, losses, liabilities, damages, costs, and expenses for any assertion of any liability, obligation, indebtedness, or claim arising from a related operation prior to the closing, or for liabilities not expressly assumed by the buyers pursuant to their contract.

**{¶24}** Finally, the court found Section 22 of the Agreement stated it contains the entire understanding and supersedes all prior and contemporaneous negotiations, statements, and agreements with respect to the subject matter.  The court found nowhere in the agreement do the parties agree that the buyers would assume any liability for unpaid utility charges, nor does the agreement provide the sellers would receive or share in any accounts receivable after the closing.

**{¶25}** On May 5, 2009, Manco's counsel filed a notice that Manco had died, and no one filed a motion to intervene or substitute for him in the lawsuit.  The court dismissed all claims by or against Manco pursuant to Civ. R. 25 (A).

**{¶26}** The trial court found the claims remaining were the claims of Jeffrey Allen Industries against Offenburger and Stonybrook Cabinet Company, and the third party claims by Stonybrook Cabinet Company against Benton.  Jeffrey Allen Industries asserted four claims against Offenburger and Stonybrook:  breach of contract, fraud, replevin, and unjust enrichment.  The court found the breach of contract and fraud

claims are predicated on the alleged parol agreement to pay an additional $97,000 over and above the $200,000 purchase price of the Asset Purchase Agreement. Jeffrey Allen Industries alleged Manco had made a verbal promise to make the further payment within a year after the closing, and alleged the appellants relied on the promise in signing the Asset Purchase Agreement. In their answer to the complaint, Offenburger and Stonybrook denied any additional agreement or fraud, and asserted affirmative defenses of the parol evidence rule, waiver, and lack of authority, among other defenses.

{¶27} The court found the third claim of Jeffrey Allen Industries was for replevin of a single double head wide-belt sander. The court found Benton admitted in his deposition this item had been sold to and rightfully belonged Manco and Offenburger, and abandoned the claim.

{¶28} The fourth claim was for unjust enrichment, concerning utility bills from the City of Galion and from Columbia Gas Company, charged against an account belonging to Jeffrey Allen Industries but ostensibly for service after Stonybrook took possession of the business premises.

{¶29} In its counterclaim Stonybrook Cabinet Company alleged conversion and civil theft, for three checks it claimed Benton intercepted from Stonybrook Cabinet Company's customers, totaling $17,258. Offenburger's affidavit also stated Benton converted three checks totaling $17,258. Benton's affidavit admitted taking two of the checks totaling $12,345 from Stonybrook customers, but asserted he took the funds as self-help to satisfy in part the $97,000 he claimed was due on the parties' oral agreement, but not contained in the Assert Purchase Agreement. The court found it was

undisputed that Benton had taken the third check because he did not expressly deny the allegation in his deposition or affidavit.

**{¶30}** The trial court found the Asset Purchase Agreement contained an integration clause, and the parol evidence rule barred introduction of any alleged verbal agreement.

**{¶31}** The court found the utility bills concerned both current and delinquent charges, and do not differentiate how much of the bills are due for utility service before the closing. The court found no party offered any evidence from which it could determine what portion of the utility service bill was incurred by Stonybrook Cabinet, and found the agreement provided the buyer would not be responsible or liable in any way for bills of the seller unless it expressly accepted responsibility for them. The court found Offenburger and Stonybrook Cabinet Company did not agree to undertake transfer of utility service accounts out of Jeffrey Allen Industries' name, and the court found it was probable that no one but the account's owner could have transferred the account to Stonybrook. The court stated it could not break down the bills, and for this reason, it could not find Offenburger and Stonybrook Cabinet Company would not be unjustly enriched if appellants paid the entire bills.

**{¶32}** The trial court concluded it was appropriate to enter summary judgment against Jeffrey Allen Industries and Benton on all claims against Stonybrook Cabinet Company and Offenburger. In addition, the court entered summary judgment in favor of Stonybrook Cabinet Company and against Benton for damages in converting the customers' checks in the amount of $17,258, with interest at the statutory rate.

**{¶33}** Civ. R. 56 states in pertinent part:

**{¶34}** "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

**{¶35}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts, *Hounshell v. American States Insurance Company* (1981), 67 Ohio St. 2d 427, 424 N.E.2d 311. The court may not resolve ambiguities in the evidence presented, *Inland Refuse Transfer Company v. Browning-Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St. 3d 321, 474 N.E.2d 271. A fact is material if it affects the outcome of the case under the applicable substantive law, *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App. 3d 301, 733 N.E.2d 1186.

{¶36}  When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court, *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St. 3d 35, 506 N.E.2d 212.  This means we review the matter de novo, *Doe v. Shaffer,* 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

{¶37} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim, *Drescher v. Burt* (1996), 75 Ohio St. 3d 280, 662 N.E.2d 264.  Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist, Id.  The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary material showing a genuine dispute over material facts, *Henkle v. Henkle* (1991), 75 Ohio App. 3d 732, 600 N.E.2d 791.

{¶38}  A failure to respond to a motion for summary judgment does not, by itself, warrant that the motion be granted. *Morris v. Ohio Casualty Insurance Co.* (1988), 35 Ohio St.3d 45, 47, 517 N.E.2d 904. Even where the non-movant completely fails to respond to the summary judgment motion, the trial court's analysis should focus on whether the movant has satisfied its initial burden of showing that reasonable minds could only conclude the case should be decided against the nonmoving party. Id. Only then should the court address whether the non-movant has met its reciprocal burden of establishing that a genuine issue remains for trial. Id.

I & II

**{¶39}** In their first assignment of error, appellants argue the trial court erred in finding the disputed agreement was fully integrated. Their second assignment of error is related, and asserts the trial court erred in not considering Manco's statement that the parties had agreed to a further payment, in determining whether the purchase agreement was fully integrated.

**{¶40}** Appellants correctly state the parol evidence applies to integrated writings. *Galmish v. Cicchini,* 90 Ohio St. 3d 22, 2002-Ohio-7, 734 N.E.2d 782. Appellants assert parol evidence is admissible to assist the court in determining whether an agreement is integrated, and whether the integration is complete or partial. *Olmsted Manor Skilled Nursing Center Ltd. v. Olmsted Manor, Ltd.,* Cuyahoga App. No. 80962, 2002-Ohio-5457, not reported in the Northeast Reporter.

**{¶41}** The *Olmsted* case involved the sale of a nursing home business. The parties agreed to a purchase price of $5,000,000, and entered into a subsequent agreement that although the sale was accomplished in September of 1997, the skilled nursing center would continue to maintain its Workers' Compensation account and pay the premiums through the end of 1997. Neither agreement between the parties anticipated that a few months later, the Bureau of Workers' Compensation discovered it had surplus funds and issued a payment for $88,248.40 as a rebate on the premiums the skilled nursing center had paid in 1997. Olmsted, Ltd. cashed the checks and refused to give the funds to Olmstead Skilled Nursing Center. The trial court awarded the rebate to the skilled nursing center, and the court of appeals affirmed, finding neither party had anticipated the situation.

**{¶42}** The court of appeals found the agreement regarding the transfer of the Bureau of Workers' Compensation account from the seller to the buyer could not be reviewed without also reviewing the purchase agreement, because obviously the transfer of the account would not have taken place if the nursing home business itself had not been sold. Thus, the agreement to transfer the account was not a complete expression of the agreement between the parties. The court found the purchase agreement for the nursing home business and the agreement to transfer the Bureau of Workers' Compensation account are related documents within a single transaction, and must be construed together. The court found the agreement to transfer the account defined only the parties' relationship with the Bureau and did not contradict the terms of the agreement to purchase the nursing home. The court found it was clear from the two documents the Bureau of Workers' Compensation account agreement was not intended to supersede any provisions of the purchase agreement. The court found this interpretation was consistent with the parties' intentions and with the expressed terms of the documents. The Court of Appeals for the Eighth District noted the purchase agreement was only partially integrated, so it can be supplemented by evidence of consistent addition terms. The additional terms must be interpreted as consistent with the document unless a contradiction is unavoidable. O*lmsted* at paragraph 23, citing 2 Restatement of Law, Contracts (1981), 92-93, Section 203(a); *Ottery v. Bland* (1987), 42 Ohio App. 3d 85, 87, 536 N.E. 2d 651.

**{¶43}** Appellants argue Manco, who was a party to the purchase agreement, admitted the purchase agreement was not the full expression of the agreement amongst the parties. When Manco filed his complaint with the Crawford County Sheriff's

Department, in an unsworn statement he described an agreement whereby he and his partner (presumably Offenburger) would escrow $50,000 and pay it out to Benton and Trimble after a year's time if the business was as profitable as they had represented and there were no other issues. Manco had a hand-written memo of the terms of the agreement, calling it a "side agreement". Manco told the Crawford County Sheriff the agreement was made prior to closing, and the parties all knew there would be a check for $200,000 at the closing. Manco indicated the sellers wanted to have more than $200,000, but Manco and Offenburger could not meet this and only wanted to borrow $200,000 from the bank. Manco stated that in addition to the $50,000 escrow, Benton and Trimble would keep a pickup truck, $11,000 from the Shelb account, a $5,000 deposit from Lutz Custom Homes, and $11,500 from the Rush deposit.

**{¶44}** Although Manco referred to the agreement as verbal, appellants argue he had a written memo of the terms. Appellants argue the agreement is admissible because Manco, a party to the agreement, admitted the parties agreed to additional terms not written into the Asset Purchase Agreement. Appellants urge because of Manco's admission, the parol evidence rule does not apply and the statements are admissible at least to prove the Asset Purchase Agreement is only partially integrated.

**{¶45}** Appellants urge Manco's statements to the Crawford County Sheriff are admissible under Evid. R. 804 (B)(3). This Rule provides a statement against interest, if the declarant is unavailable as a witness, is an exception to the hearsay rule. Appellants argue Manco's statements to the Sheriff's Department are contrary to Manco's pecuniary interest, such that a reasonable person in Manco's position would not have made the statements unless he believed them to be true.

**{¶46}** Appellants also argue because the exhibits listing the assets to be sold was not attached to the contract the parties signed, it was clearly not a fully integrated contract.

**{¶47}** Appellees reply a written contract which appears to be complete and unambiguous on its face is presumed to be the final and complete expression of the parties' agreement. *Deutsch Bank National Trust Company v. Pevarski,* 187 Ohio App. 3d 455, 471, 2010-Ohio-785, 932 N.E. 2d 887. The parol evidence rule applies where the language in the agreement is unclear or ambiguous, but the additional terms sought to be added must be consistent with the terms in the original document. Appellees assert appellants are arguing the real sales price was $297,000, clearly inconsistent with the Asset Purchase Agreement's statement the purchase price was $200,000.

**{¶48}** Appellants cite loan documents prepared prior to the closing during the course of negotiations between Offenburger and the banker. Appellees argue the documents are excluded by the parol evidence rule, and do not support appellants' assertion the purchase price was anything other than $200,000. The record contains an affidavit from Offenburger's banker, who asserts the documents are all progress notes made while the parties were "haggling" over the final purchase price. The banker's affidavit asserts the notes do not represent a purchase price other than the one signed by the parties for a final total purchase price of $200,000.

**{¶49}** In *National City Bank of Akron v. Donaldson* (1994), 95 Ohio App.3d 241, 642 N.E.2d 58, the Court of Appeals for the 9th Dist. found where there is an integrated contract, the parties may argue about the meaning of terms in the document or they may argue they had another agreement in addition to the document at issue. However,

the parol evidence rule bars all evidence contradicting the language in the document. *Donaldson,* at 245, citations deleted.

**{¶50}** Appellees also assert the statements by Manco to the Crawford County Sheriff are hearsay, and Manco asserted this agreement was made prior to the final Asset Purchase Agreement. The record shows Manco clearly stated the payment of the $50,000 was payable only after a year, and conditioned on the business proving to be profitable as represented. Appellees argue if the statement was made, it referred to a separate agreement, which does not demonstrate the Asset Purchase Agreement was not integrated. Likewise, appellees argue because Manco explained it was conditional, and thus Manco's statement was not against his pecuniary interest. We agree.

**{¶51}** We find the proposed evidence violates the parol evidence rule, because it is offered to contradict, not compliment or supplement the original agreement.

**{¶52}** The first and second assignments of error are overruled.

III.

**{¶53}** In their third assignment of error, appellants argue there is a genuine issue of material fact in whether Offenburger knew of the side agreement to which Manco referred in his statement to the deputy sheriff. The trial court found there was no evidence Offenburger assented to or joined in the agreement. Manco's statement to the sheriff's department stated he was in communication with Offenburger throughout the whole process culminating in the side agreement. In his affidavit Benton stated Offenburger told him the agreement they signed at closing was "for the bank", and the parties would have to amend the Asset Purchase Agreement later to include the $50,000 later payment and to include the exhibit listing the assets to be sold, which was

not attached to the agreement the parties signed. Benton testified he relied on Offenburger's assurance the agreement did not include the final purchase price or a list of all the items included in the sale.

{¶54} We find it is irrelevant whether Offenburger knew of a side agreement, because we find the statement made by Manco to the sheriff's department, and the other evidence about the alleged side agreement is not admissible to attack the parties' Asset Purchase Agreement.

{¶55} The third assignment of error is overruled.

IV.

{¶56} In their fourth assignment of error, appellants argue the trial court erred in finding appellees were not liable for the utility bills charged to appellants' account. We agree.

{¶57} The court found there was no evidence from which it could apportion the utility bills, and so the party whose name is on the account, Jeffrey Allen Industries, was liable for the total amount. The utility bills in question show the dates of service and the previous and current billing amounts. The current billing on the electric bill is from April 13 to May 14, all after the March 23 closing. The gas bill shows a balance past due from May 3 and the current usage amount due on June 1. From this, the court could determine at least a portion of the bills were for utilities used during the time appellees were in possession of the premises. We find the trial court was incorrect in finding it had no evidence from which to determine whether appellees were responsible for any of the bills.

**{¶58}** The court found it was "doubtful" whether any person other than Jeffrey Allen Industries' owner could have transferred the account over to appellees after the sale. There is no evidence in the record supporting that finding.

**{¶59}** Section 2 of the Agreement is entitled "Liabilities Assumed". The agreement states on the date of the closing, the buyer agrees to assume and perform the contracts of the seller listed in Exhibit B. Other than the contracts listed in Exhibit B, the buyer assumes no liabilities of the seller. Exhibit B is blank. In his deposition Offenburger stated he believed this section referred to any work in progress and customer contracts Jeffrey Allen Industries had entered into prior to the sale, but in fact there were no contracts included in the sale. Offenburger testified he was not involved with the work at the shop and did not know if Stonybrook completed any work Jeffrey Allen Industries had begun.

**{¶60}** Section 15 of the agreement relates to indemnification and states the seller will indemnify the buyer against all claims, losses, liabilities, damages, costs, and expenses arising prior to the closing. The agreement does not address how the utilities are to be transferred or how to apportion the billings if there is a carry-over unpaid balance. We conclude the agreement does not address the situation with the utility bills and we find it was not anticipated by the parties. *Olmsted*, supra.

**{¶61}** The fourth assignment of error is sustained.

V.

**{¶62}** In their fifth assignment of error, appellants argue the trial court erred in finding that in executing the Asset Purchase Agreement and accepting the $200,000

payment at closing, appellants waived any claim for additional payment. The trial court found accepting performance operates as a waiver of any claim of fraud.

{¶63} In *Galmish* supra, the Supreme Court discussed the interaction between the parol evidence rule and allegations of fraud. The court noted the principal purpose of the parol evidence rule is to protect the integrity of written contracts. *Galmish,* at 27, citing *Ed Schory & Sons, Inc. v. Society National Bank* (1996), 75 Ohio St. 3d 433, 440, 662 N.E. 2d 1074. The court found the parol evidence rule does not prohibit a party from introducing extrinsic evidence for the purpose of proving fraudulent inducement, even if the agreement contains an integration clause. *Galmish,* supra, at 28, citations deleted.

{¶64} The court went on to hold, however, the parol evidence rule applies in cases where a party alleges the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing. This means an oral agreement cannot be enforced in preference to signed writing which pertains to exactly the same subject matter, but has different terms. *Galmish* at 29, citations deleted. The court explained, "[T]he parol evidence rule will not exclude evidence of fraud which induced [a party to sign] the written contract. But, a fraudulent inducement case is not made out simply by alleging that a statement or agreement made prior to the contract is different from that which now appears in the written contract. Quite the contrary, attempts to prove such contradictory assertions is exactly what the parol evidence rule was signed to permit." Id., citing Shanker Judicial Misuses of Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (With Some Cheers and Jeers for the Ohio Supreme Court) (1989), 23 Akron L. Rev. 1.7.

{¶65} In the *Galmish* case, Galmish acquired certain property under the terms of the divorce settlement with Cicchini. Two years after the divorce, Galmish gave a developer an option to purchase the property, but the developer's interest was contingent upon its ability to acquire adjacent parcels. The developer contacted Cicchini and asked for his help to ensure Galmish's property would be available when the adjacent parcels' legal complications were resolved. Cicchini informed the developer he had either purchased or was going to purchase the property from Galmish, and he would sell it to the developer when the time came. The developer then notified Galmish it would not exercise its option to purchase, and informed Galmish she was free to sell or lease the property.

{¶66} Cicchini then told Galmish if she sold the property to him he would resell the property to the developer at a better price than she could negotiate. Galmish and Cicchini agreed Cicchini would purchase the property from Galmish for $765,000 and re-sell the property to the developer for $1,700,000. The parties agreed to split the profits. Cicchini subsequently refused to sign the purchase agreement with the developer, and Galmish sued, arguing Cicchini was attempting to defeat her rights under their agreement. The jury found in favor of Galmish and awarded her nearly $1,500,000 in compensatory and punitive damages and attorney fees. This court found the parol evidence rule barred Galmish's claim Cicchini fraudulently induced her to sell the property to him because he never intended to resell the property to developer.

{¶67} The Supreme Court reversed our decision, and reinstated the verdict. The court found Galmish's claim was essentially that the resale of the property at a profit was a condition of the sale to Cicchini, and at the time the parties entered into the

contract Cicchini never intended to resell the property. The Supreme Court found Galmish's alleged agreement to resell the property did not contradict or vary the terms of the written agreement under which she sold the property to Cicchini, and thus was not barred by the parol evidence rule.

**{¶68}** Here, appellants argue they were defrauded because they were induced to sign the Asset Purchase Agreement by appellees' promise, made before the written contract was signed, to pay a higher price than that set out in the contract. This certainly varies and contradicts an essential term of the contract.  We find the evidence cannot be produced to show fraud in inducing Trimble, Benton, and Jeffrey Allen Industries to sign the contract of sale.

**{¶69}**  The fifth assignment of error is overruled.

VI.

**{¶70}** In their sixth assignment of error, appellants urge the trial court erred in entering judgment for appellees on their conversion claim against appellant Benton. The checks at issue are: from Logan Construction for $7,600; from Kay Rush for $4,745; and from Lutz Custom Homes for $4,912.50. In his deposition Benton claimed as part of the side agreement Jeffrey Allen Industries was to keep all three checks, but he only acknowledged receiving two. The court found Benton had converted all three because his admission of taking two does not constitute a denial that he took the third.  The record does not contain any evidence that Benton either denied or admitted taking the third. The court found as such, the undisputed evidence is that Benton took and converted all three checks.

{¶71} For purposes of summary judgment, if appellees presented evidence Benton received the third check, then Benton was required to come forward with evidence disputing this. However, we find no evidence in the record showing Benton ever received or retained the third check. In his affidavit Offenburger states he was informed by Manco that Benton had converted thousands of dollars from Stonybrook's customers. Offenburger stated he confirmed this and then instructed Manco to report the theft to the Sheriff's Department. Offenburger stated in his deposition Manco told him he "got a letter or something" from Benton saying he had photocopied and was holding checks belonging to Stonybrook. Attached to appellants' response to appellees' motion for summary judgment is a copy of a letter from Benton's counsel to Offenburger admitting Benton had received two checks totaling $12,345, the sum of the Rush and Logan checks.

{¶72} Offenburger's uncorroborated statements are hearsay and do not support appellees' allegation Benton converted the third check. Accordingly, we conclude the court erred in finding Benton converted the check for $4,912.50 from Lutz Custom Homes, but correctly found the other two checks, totaling $12,345 were retained by Benton but rightfully belonged to appellees.

{¶73} The sixth assignment of error is sustained in part and overruled in part.

**{¶74}** For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed in part and reversed in part, and the cause is remanded to the court for further proceedings in accord with law and consistent with this opinion.

By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

WSG:clw 0503                              _____
                                         HON. PATRICIA A. DELANEY

[Cite as *Jeffrey Allen Industries, L.L.C. v. Manco*, 2011-Ohio-2655.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JEFFREY ALLEN INDUSTRIES, LLC | : | |
| Plaintiffs-Appellants | : | |
| -vs- | : | JUDGMENT ENTRY |
| RONALD J. MANCO, ET AL | : | |
| Defendants-Appellees | : | CASE NO. 2010-CA-0145 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed in part and reversed in part, and the cause is remanded to the court for further proceedings in accord with law and consistent with this opinion. Costs to be split between the parties.

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. PATRICIA A. DELANEY